[Civ. No. 1579. Third Appellate District.—September 15, 1916.]

WILLIAM GRANT, Respondent, v. CHARLES A. WARREN, Appellant.

SALE OF BONDS—PAYMENT OUT OF PROCEEDS OF MARBLE QUARRY—FAIL-URE TO WORK QUARRY—MEASURE OF DAMAGES.—Where a sale of mortgage bonds of a corporation owning a marble quarry is made upon condition that the purchase price of such bonds, other than the amount paid upon their delivery, should be made by the vendee causing a corporation to be organized for the working of the quarry and having such corporation enter into an agreement with the vendor to pay to the latter such balance out of the proceeds of the quarry, and the vendee thereafter repudiates his agreement to work the mine, the measure of the plaintiff's damage is the full balance due in cash, and not the amount of the royalty that the quarry might have yielded had it been worked.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Thomas B. Dozier, and Reid & Dozier, for Appellant.

Harding & Monroe, Grant & Zimdars, Beverly L. Hodghead, and W. H. Bryan, for Respondent.

BURNETT, J.—The appeal is from the judgment and also the order denying a motion for a new trial. It is virtually

conceded, however, by appellant that by reason of irregularities as to the statement on motion for a new trial we are, in effect, limited to the consideration of the appeal from the judgment and to the determination of whether the findings support said judgment.

The findings necessary for an understanding of the situation are as follows: "That heretofore and on the 26th day of March, 1912, the plaintiff was the owner of five hundred and ninety-five per cent first mortgage bonds of the par value of five hundred dollars each, issued by the Columbia Marble Quarries, Inc., a corporation. That the payment of said bonds was secured by a first lien, mortgage or deed of trust made by said Columbia Marble Quarries, Inc., on that certain property situated in the county of Tuolumne, state of California, which property is more particularly described in the complaint on file herein. That said property included a certain marble quarry hereinafter referred to as the marble quarry property. That at the time of the issuance of said bonds and continuously up to and until the time of the sale thereof, as hereinafter found, the said Columbia Marble Quarries, Inc., was the owner of said marble quarry property subject to said bonded indebtedness.

"That on or about the 26th day of March, 1912, this plaintiff sold and delivered to the defendant, Charles A. Warren, the said five hundred and ninety bonds upon the following express terms and conditions, that is to say: First: That the said defendant should immediately pay to plaintiff the sum of fifteen thousand dollars as a part of the purchase price of said bonds.

"Second: That said defendant, upon receiving delivery and possession of said bonds should immediately proceed to sell, or cause to be sold, the property described in the deed of trust made to secure the payment of said bonds, in accordance with the powers conferred upon the holder or holders of said bonds by such deed of trust, and at the sale thereof should purchase said property and hold the same upon certain trusts for the use and benefit of this plaintiff; that is to say: the said defendant agreed to cause a corporation to be organized for the acquiring, owning and operating of said marble quarry property and that he would cause and procure said corporation to enter into a proper written agreement with this plaintiff whereby it should pay plaintiff beginning

eighteen months from the 26th day of March, 1912, the sum of fifty cents for each and every ton of marble taken out and shipped from said quarries until there should be paid to plaintiff the further sum of twenty-eight thousand dollars as the balance of the purchase price of said five hundred and ninety bonds.

"That it was further agreed that such royalties should be paid on the 15th day of each and every month for all marble shipped during the previous month, and that all such royalty or royalties should be a first lien charge against said marble quarry property."

Then follows a finding to the effect that Warren, on the delivery to him of said bonds, paid therefor the said sum of fifteen thousand dollars, and proceeded to sell said property under the terms of said trust and thereupon purchased the same; that he organized a corporation known as the Warren Marble Company; that he acquired control of its corporate stock and of said corporation and dominated its policy and business affairs; that said corporation, "at the behest and instigation of said Charles A. Warren and with full knowledge of the claims of this plaintiff against said property and in violation of such claims and without the knowledge or consent of this plaintiff, the said Warren Marble Company on or about the first day of July, 1912, made a certain mortgage or deed of trust, mortgaging and conveying said marble quarry property to the defendant, the Savings Union Bank and Trust Company, for the purpose of securing the payment of one hundred bonds of the denomination of one thousand dollars each." That said mortgage was duly acknowledged and was recorded on July 29, 1912; that after said mortgage was recorded, the said corporation made and delivered to plaintiff the agreement attached to the complaint and marked Exhibit "B," providing "that this contract and all moneys payable thereunder shall be a first lien and charge against the said marble quarry property and against the real property herein described"; that at the time of the delivery of said Exhibit "B" plaintiff believed it constituted a first lien and charge against said property; that he had no knowledge or notice of the creation of said bonded indebtedness of one hundred thousand dollars nor of the making or recording of said deed of trust, and that defendants Warren and the Warren Marble Company repeated to him that said

agreement constituted a first lien and charge upon said property.

It is also found that plaintiff performed all the conditions of his agreement; that immediately after he discovered that "said bonded indebtedness had been created and had been made a lien and charge upon the said marble quarry property prior to the lien or charge of said agreement Exhibit 'B,' this plaintiff demanded of said defendants Charles A. Warren and the Warren Marble Company that they cancel and annul said bonded indebtedness and said mortgage or deed of trust, and make said agreement Exhibit 'B' a first lien or charge against said property, but that said defendants and each of them refused and have failed so to do," and that said defendants notified plaintiff that they did not intend engaging in the business of operating and carrying on said marble quarry enterprise and of quarrying and shipping marble from said quarry, and that they did not intend to perform the terms and provisions of said agreement Exhibit "B."

The findings disclose, as stated by respondent, that Warren broke his contract: "First, by conveying the property to the corporation without reserving a first lien to plaintiff; and without which lien no one would have a right to extract marble from the quarry. Second, by impressing the property so conveyed, with the first lien of one hundred thousand dollars in priority to plaintiff's security, thus putting it out of his power to perform his contract with plaintiff. Third, by repudiation of plaintiff's right to have the first lien. Fourth, by notice to plaintiff that neither Warren nor the company intended to operate the quarry or pay the royalty."

The groundwork is thus laid for a judgment in favor of plaintiff unless there be merit in the contention of appellant that, the action being for damages, there should be a specific finding as to the actual pecuniary detriment suffered by plaintiff in consequence of the violation of the contract on the part of appellant. It is argued that for aught that appears to the contrary, there may have been no actual loss to plaintiff as a result of said dereliction. For instance, among other considerations, it is suggested that the quarry, if worked, might not have yielded sufficient to pay any portion of said royalty, and reference is made to section 3358 of the Civil Code, providing that "Notwithstanding the provisions of this chapter, no person can recover a greater amount in

damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in the articles on exemplary damages and penal damages, and in sections 3319, 3339, and 3340," it being claimed that the present case does not fall within any of said exceptions.

But we do not regard this action as technically one for damages. It is rather a suit to recover the balance due on the purchase price of property that has been completely transferred to the vendee. There would, of course, be no question if the promise to pay the said twenty-eight thousand dollars had been absolute. In other words, if Warren had promised to pay the said amount on delivery of said property by the vendor and had failed or refused to do so, plaintiff could maintain his action immediately. Here the promise was to pay the balance out of the proceeds of the mine, it is true, and, therefore, was conditional, but in consequence of Warren's failure to give the promised security and his repudiation of his agreement to work the mine, the law treats his promise as an absolute and unconditional one, and holds him to an obligation to pay said balance in cash. The authorities seem to take this view of the situation, and we may follow respondent in his quotations from some of the cases.

In *Wolf* v. *Marsh,* 54 Cal. 228, the action was upon a note for a certain amount containing this provision: "This note is made with the express understanding that if the coal mines in the Marsh Ranch yield no profits to me, then this note is not to be paid and the obligation herein expressed shall be null and void." Defendant thereupon conveyed the property, making it impossible for him to operate the mine or derive any profit. In holding him liable on the note, the supreme court said: "When he did that he violated his contract and the note at once became due and payable."

In *Love* v. *Mabury,* 59 Cal. 484, the contract for the payment for work done on a mine contained this clause: "And the balance of nine hundred dollars to be paid out of the first proceeds of the mine after deducting expenses." The court declared: "That the contract contemplated that the defendants were to work the mine 'out of the first proceeds of which, after deducting expenses,' the balance was to be paid, does not admit of doubt. And we are of the opinion that the failure and refusal to commence to work it within a reason-

able time after the completion and acceptance of the labor and materials bestowed upon the property, rendered them liable for the balance due therefor.''

In *Poirier* v. *Gravel*, 88 Cal. 79, [25 Pac. 962], the suit was upon a written promise to pay a stated sum containing this provision: ''The said sum to be so paid in installments in such amounts and at such times as I shall realize each month from such products after payment of all costs and expenses of the gathering or obtaining and selling such products. The said sum of money to be paid only and exclusively from such products of said land as I may be entitled to, and no other property of mine shall be subject to said debt or obligation.'' The defendant conveyed the property and thereafter derived no profit. It was said by the court: ''This being so, the balance unpaid became immediately due and payable and the plaintiff could maintain an action for the recovery thereof.''

In *Bagley* v. *Cohen*, 121 Cal. 604, [53 Pac. 1117], the balance due was to be paid ''out of the profits realized by me from my business of packing raisins at Malaga, during the present season.'' Defendant conveyed the property and it was held that ''his liability became thereupon fixed and absolute.''

In *Carter* v. *Rhodes*, 135 Cal. 46, [60 Pac. 985], the agreement provided: ''And one thousand dollars balance to be paid only out of the net proceeds of the working of the one-half interest in said mineral claim conveyed, and in no event shall the one thousand dollars, or any part thereof, become a personal claim against the party of the second part—that is, the appellant.'' The court said: ''By the sale of his interest in the mine, the appellant put it out of the power of the respondent to receive the thousand dollars from the net proceeds of that interest and appellant became at once personally responsible to pay the thousand dollars.''

The cases where the defaulting party failed to give security as promised for the balance of the consideration are of the same tenor. Among the citations, we may refer to *Carnahan* v. *Hughes*, 108 Ind. 227, [9 N. E. 80], *Wheeler* v. *Harrah*, 14 Or. 325, [12 Pac. 500], and *Cook* v. *Stevenson*, 30 Mich. 243.

In the first of these, it is said: ''It is abundantly settled that where goods are sold upon credit, the purchaser agreeing as part of the contract to execute notes payable at a future day

for the purchase price, the refusal of the purchaser to execute the notes according to the contract entitles the seller to maintain an action for such refusal, and the measure of damages is the full price of the goods sold.''

In the Wheeler case, *supra*, the court says: ''The naked obligation of the defendant was not sufficient to obtain the credit; nor would it have been received, and the property delivered, without the promise of security as agreed. When credit is given for the price of goods sold on the condition that the purchaser's note, with surety, be given therefor, and this condition is not complied with, but the property is taken by the purchaser, he is liable for the price at once, and before the expiration of the proposed term of credit.''

In the Michigan case, *supra*, it was declared as to the defendant: ''By refusing or failing to keep that term in the agreement which was introduced to assure him delay, he entitled the other party to insist upon the resulting alternative of immediate payment.''

Some of the cases refer to the amount recovered as ''damages,'' and declare that the vendor will be entitled to recover as damages the whole value of the goods, it being suggested, though, that there may be ''a rebate of interest during the stipulated credit.'' Such rebate, it may be stated, was allowed in the case at bar.

If we regard the amount recovered as damages, it is apparent that no other just rule could be applied in determining the amount. It is impossible, in other words, to say just how much would have been taken from the quarry and what the payments to plaintiff would, therefore, have been, but this difficulty was created by the refusal of appellant to perform his contract. He therefore is in no position to say that respondent must prove his actual damages, but the law holds him to the measure that he himself prescribed.

We think the foregoing consideration is decisive of the case, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 14, 1916.