[Civ. No. 1869.   Third Appellate District.—June 13, 1919.]

## D. B. RATZLAFF, Respondent, v. TRAINOR-DESMOND COMPANY (a Corporation), Appellant.

[1] BROKER'S COMMISSIONS—ACTION TO RECOVER — CONSIDERATION DISPUTED—ADMISSIBILITY OF PAROL EVIDENCE.—In an action to recover an agreed commission for the sale of certain real property, if the consideration for the agreement is disputed, parol evidence is admissible to show the services performed.

[2] ID.—COMMISSION DEPENDENT UPON CONSUMMATION OF SALE— DISPOSITION OF PROPERTY BY VENDOR—ADMISSIBILITY OF PAROL EVIDENCE TO SHOW STATUS OF CONTRACTS TO PURCHASE.—Where the contract provides that the broker's commission is to be paid *pro rata* as the purchase price for the land is paid, and the vendor parts with the title to the land before such purchase price is paid, in an action to recover the agreed commission, parol evidence is admissible to show that at the time such vendor parted with all interest in the property the contracts between it and the purchasers secured by the plaintiff were in full force and effect.

[3] ID.—EFFECT OF DISPOSITION OF PROPERTY ON COMMISSION CONTRACT.—Where a vendor, after entering into a contract for the sale of its property, conveys its title to the property, and assigns its agreement to sell to another, it immediately becomes liable to the agent who effected such sale for the agreed commission, although such commission was made dependent upon the consummation of the contract of purchase.

[4] ID.—INTEREST ON DEFERRED COMMISSIONS—FROM WHAT DATE COMPUTED.—Where a commission contract provides that the commissions are to bear interest "payable as received" but do not specify the date from which interest is to be computed, interest will be allowed from the real date that the instrument was executed rather than the date that it bears.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

J. W. S. Butler, C. P. McLaughlin and C. E. McLaughlin for Appellant.

Driver & Driver and B. F. Van Dyke for Respondent.

BURNETT, J.—On or about the first day of March, 1912, the Sacramento Valley Colonization Company entered into a contract with the defendant to sell to the latter a large body of land in the Rancho del Paso, in Sacramento County. At that time and for some time thereafter plaintiff was engaged in selling lands for defendant, and on or about March 26th following the former negotiated with one W. H. Stewart for the sale of some 1,608.33 acres, and thereafter defendant entered into a written contract with Stewart for the sale and purchase of said tract, acknowledging the receipt · of five thousand dollars, and agreeing that, when Stewart paid an additional sum of twelve thousand dollars on the purchase price, defendant would give Stewart a new contract according to a form attached to the first contract. When said twelve thousand dollar payment was about due according to said contract, plaintiff ascertained that Stewart was having considerable difficulty in raising funds to meet this payment, and on the twelfth day of June, following, without any objection from Stewart, plaintiff induced one W. B. Harrison to enter into a contract with defendant for the purchase of section 29 included in Stewart's contract. About this time defendant, without the assistance of plaintiff, sold to one Jonas 320 additional acres of said tract covered by the Stewart contract. Thereupon plaintiff persuaded Stewart that the latter could handle the residue of the land included in said contract and he came to California from Oklahoma and entered into the second written contract with defendant, whereby the latter agreed to sell to Stewart the north one-half of section 65 and of section 62, being all the land covered by Stewart's first contract, after deducting those portions sold to Harrison

and Jonas. Defendant gave Stewart credit on the second contract for the five thousand dollars, paid on the first, the second being dated July 1, 1912. Immediately after this plaintiff and defendant executed the following written agreement: "In entering into an agreement with D. Ratzlaff in the sale of the following described property it is understood that the net price to him would be $87.50 and the said Ratzlaff having disposed of the said land at $92.50 per acre, it is therefore understood and agreed that in consideration of the work done and to be done in the sale of Section No. 29, and the North half of section No. 62 and North half of section No. 65, amounting to 1288.33 acres located on Rancho del Paso in the County of Sacramento, State of California, we agree to pay D. B. Ratzlaff of the city of Sacramento, state of California, the sum of $5 per acre as commissions. Said commissions to be paid pro rata as paid by the purchasers after the first twenty per cent payment is received. No commissions to be paid out of the first twenty per cent. The above commissions are to bear 6% interest, payable as received." We may refer to this as "the commission contract," and upon it the action is based. It was dated February 19th, but was actually executed in the early part of July, 1912. The reason for antedating is explained by plaintiff, but that consideration is of no importance here. Thereafter and on or about January 18, 1913, while said Stewart's second contract and the Harrison contract were in full force, defendant assigned to the Farmers & Bankers' Investment Company its said contract of purchase with the Sacramento Valley Colonization Company and took in payment therefor the greater portion of the capital stock of said Investment Company. About the same time, at the request of said defendant, the Colonization Company conveyed the lands covered by said commission contract to the Investment Company, and on or about June 11, 1913, the Trainor-Desmond Company sold all of its said stock to one E. F. Robbins. Thereafter, it is plain, defendant had no interest whatever in any of said lands or in either of said contracts with Stewart and Harrison.

As to the complaint in the action, no criticism seems to be justified. In brief, it may be stated that it alleges the

execution of said commission contract, the performance by plaintiff of the terms, covenants, and conditions therein recited, "that defendant has received payment in full for said lands, that heretofore and while said contracts of sale were in full force and effect, defendant sold and transferred all its interest in the said lands," and that no part of said amount agreed upon has been paid. The complaint was verified, and in the verified answer defendant admitted the execution of the commission contract, but claimed that plaintiff had sold thereunder only 648.33 acres and was therefore entitled to the sum of $3,241.65 as commissions instead of $6,441.65 as claimed. A counterclaim was also set up for about one thousand six hundred dollars, and the prayer was that this sum might be set off against plaintiff's claim, and defendant offered to pay to plaintiff the difference. Defendant was permitted, however, by the court to file an amended answer, from which was omitted the express admission of any amount due plaintiff. No objection was made to the form of the amended answer, although somewhat uncertain in its denials of certain material allegations of the complaint, and the cause was tried by the court. The findings were in favor of plaintiff on the commission contract for the full amount claimed, to wit, the sum of $6,441.65 together with interest thereon at six per cent from the nineteenth day of February, 1912, amounting to $8,060.23, and in favor of defendant for the counterclaim for a little less than the amount demanded. The judgment was for the difference, the sum of $6,130.66 in favor of plaintiff, from which the appeal is taken.

[1] In the trial of the cause much parol evidence was received of the services performed by plaintiff in the effort to secure purchasers for said tract of land and to effect its sale. This included an account of the negotiations with said Stewart and Harrison and a statement of the contracts which plaintiff induced them to execute. The evidence was objected to, principally on the ground that it was thereby sought to prove the authority of plaintiff, as agent to represent defendant in the sale of real property—and it is claimed here that such evidence was inadmissible because violative of the statute of frauds, requiring such authority to be in writing. But appellant is entirely mistaken in the view that said rule is applicable to this case. The evidence

was received and was certainly admissible for the purpose of showing the consideration for appellant's promise to pay respondent said commission of five dollars per acre. It was not required of respondent in the first instance to offer such evidence, since the written contract would raise the presumption of sufficient consideration. But the answer virtually denied that any service was performed that would support the said promise to pay, and respondent, by offering such proof, simply anticipated this defense. Plaintiff, let it be repeated, did not rely upon any parol authorization of agency, but this action was and is based upon said *written* promise to pay. If A should enter into oral negotiations with B to sell for the former a tract of land and the service should be performed, and thereafter A should execute a written promise to pay a commission therefor, would anyone contend that, if the consideration for said promise were disputed, B would not be permitted to testify as to the service he had performed for A? We think there can be no serious controversy about the matter and the ruling was altogether correct.

[2] Parol evidence was also received to show that, at the time appellant disposed of all interest in said land and in said contracts with Stewart and Harrison, the agreements for the sale to them were in full force and effect. This was entirely proper in view of the condition prescribed in the written promise for the payment of the commission. It was to be paid "*pro rata*" as the purchase price was paid. If, therefore, the contracts were forfeited by Stewart and Harrison and they declined or refused to pay the purchase price, respondent would not be entitled to his commission and appellant, of course, would be released of liability therefor. Respondent assumed the responsibility of losing his commission if said Stewart and Harrison defaulted. But he claimed, and still contends, that his commission became due by reason of the default of appellant, and, manifestly, to take advantage of that default, he must show that he had not already lost his right in consequence of the forfeiture of the said Stewart and Harrison contracts.

[3] There remains the important question whether the legal effect of the acts of appellant as to the sale of the property to the Farmers & Bankers' Investment Company

was to make the said commission immediately due.  It is the contention of respondent that by said sale appellant "put it out of its power to ever receive any further payments or benefits under the Harrison and Stewart contracts of sale or to take steps to enforce payment thereunder. They likewise by this sale put it out of the power of plaintiff to do any further work for them under his commission contract, if there was any further work to be done thereunder."  In support of this claim they cite: *Wolf* v. *Marsh*, 54 Cal. 228; *Love* v. *Mabury*, 59 Cal. 484; *Poirier* v. *Gravel*, 88 Cal. 79, [25 Pac. 962]; *Bagley* v. *Cohen*, 121 Cal. 604, [53 Pac. 1117]; *Grant* v. *Warren*, 31 Cal. App. 458, [160 Pac. 847]; *Realty Bonds etc. Co.* v. *Point Richmond Canal etc. Co.*, 171 Cal. 238, [152 Pac. 433]; *Cheatam* v. *Yarbrough*, 90 Tenn. 77, [15 S. W. 1076].

In the Wolf case, the promise in writing was to pay W. a certain sum of money, but with the express understanding that, if certain mines belonging to M. should yield him no profit, then the note was not to be paid, and the obligation was to become null and void.  It was held that the yielding of profit to M. from the mines was a condition precedent to the obligation incurred; but that M. having rendered the happening of the condition impossible by selling the mines, the obligation became absolute.  The decision followed the statement of the principle in Bishop on Contracts, section 690, as follows: "If one voluntarily puts it out of his power to do what he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not expired."

In the Love case the plaintiff's assignors "contracted to furnish materials and perform work in defendants' mine, in consideration of which the defendants agreed to pay them one thousand seven hundred dollars—eight hundred dollars down during the progress of the work, and the balance out of the first proceeds of the mine, after deducting expenses."  It was held that the contract contemplated that the defendants were to work the mine; and their failure and refusal to commence to work it within a reasonable time rendered them liable for the balance to be paid.

In the Poirier case, *supra*, the promise was to pay a certain sum of money in installments, when realized, from the

products of certain land owned by the defendant, and it was held that the money immediately became due by the sale and conveyance by the defendant to others of the land and products.

In the Bagley case, a note was given to be paid out of the profits of a business, and it was, held that the liability became fixed and absolute when the maker voluntarily put it out of his power to make any profit out of the business or to fulfill the contract according to its terms, by a sale and conveyance of the business.

In the Grant case, the balance of the purchase price of certain lands was to be paid out of the proceeds of a certain quarry, and the vendee having repudiated his agreement to work the mine, it was held that the measure of plaintiff's damage was the full balance due in cash, and not the amount of the royalty that the quarry might have yielded had it been worked.

In the Realty Bonds case, the action was by an agent to recover commissions for the sale of a tract of land to be paid out of the purchase price. The vendor agreed, however, to make extensive improvements on the land. He failed to keep his agreement, and it was held by the supreme court that this tended to show that he had prevented the purchasers from paying the purchase price, and that, under these circumstances, the agent was entitled to his full commission.

In the Cheatam case, a real estate broker was to be paid his commission out of the purchase price, but it was held that he was entitled to said commission notwithstanding there was no sale, since the sale was not consummated by reason of a defect in the vendor's title.

The principle of the foregoing cases would assuredly apply here, if it be true, as claimed in the brief of appellant, that the Stewart contract was canceled by mutual consent of Stewart and appellant. If appellant consented to such cancellation it would, of course, by this voluntary act, in a legal sense prevent the payment of the purchase price. The commission contract necessarily implied that appellant would act in good faith and do nothing to prevent, or even discourage or embarrass the completed purchase of the property. Indeed, according to the plainest

principles of honesty and fair dealing, appellant was required to do everything possible to promote the purchase of the land by Stewart and Harrison, and thereby to aid in securing the purchase price, to the end that respondent might receive compensation for the services which he had performed.

The court, however, found that the said contracts of Stewart and Harrison were still in force at the time of the conveyance as aforesaid to the said Farmers & Bankers' Investment Company. But by this conveyance and the assignment to said company by appellant of all its interest in said Stewart and Harrison contracts it waived all interest in the payment of said purchase price, and violated its implied obligation to promote the purchase of the property by Stewart and Harrison. The commission contract clearly contemplated that appellant would not change its attitude toward the property to the detriment of respondent. This is not like the case where a vendor, who has entered into an executory contract for the sale of real estate simply conveys the property to another before the maturity of the obligation under said contract or where he enters into a contract for the sale of property which he does not own at the time of the execution of the contract. But in the case at bar, the vendor not only conveyed all of his title in the land but, also, relinquished all of his interest in the contract of sale, in which contract respondent was directly interested and upon which the payment of his commission depended. The effect of appellant's conduct, as far as respondent's interest is concerned, was the same as though the former had entirely rescinded or abandoned the contracts with Stewart and Harrison.

In 39 Cyc. 1388, it is said: "According to the weight of authority, where the vendor upon default in performance of the purchaser or in the absence of such default sells the land to a third party, this will amount to a rescission of the contract of sale, and *a fortiori* the contract will be considered as rescinded when in addition to the sale the vendor notifies the purchaser that he considers his contract rescinded. According to some decisions, however, sale of the property to a third person does not of itself constitute a rescission. These decisions proceed upon the

theory that the vendor has not made performance on his part impossible, since he has it in his power to repurchase the property and perform the contract." The rule as stated in the latter portion of the above quotation prevails in California. (*Joyce* v. *Shafer*, 97 Cal. 335, [32 Pac. 320]; *Shively* v. *Semi-Tropical Land Co.*, 99 Cal. 259, [33 Pac. 848].)

But here, as we have seen, the appellant has gone further and assigned its agreement to sell. It has therefore in effect abandoned and made it impossible for it, at least, to carry out the contract with Stewart and Harrison.

In fact, by said commission contract, the parties contemplated that appellant should retain its interest in the property and in the purchase price until the commission was paid. (*Love* v. *Mabury*, 59 Cal. 484.) While not explicitly stated it is fairly implied, indeed, that the commission was to be paid out of the purchase price. Is that not a reasonable inference from this language: "Said commissions to be paid *pro rata* as paid by the purchasers after the first twenty per cent payment is received. No commissions to be paid out of the first twenty per cent?" Why should appellant be at pains to provide that no part of the commissions shall be paid "out of" the first twenty per cent of the purchase price, if it was the understanding that it should be paid out of no portion of said price? The fact that the first twenty per cent was thus distinguished creates the implication that the remaining eighty per cent was to be impressed with the burden of the commission.

We may add that this view leads to no injustice, since the services were performed by respondent and a large sum of money was paid to appellant by Stewart and Harrison and the property was afterward sold for its full value.

Appellant claims that "the finding and judgment show that the court allowed $5 per acre on 1,608.33 acres. The contract on its face provides only for commission on 1,288.33 acres." We do not so read the record. The court found that the principal sum due for commissions is $6,441.65. As we figure it, 1,288.33 acres at $5 per acre would just equal that sum.

[4] The remaining question relates to the allowance of interest. It is to be observed that the commission contract

does not specify the date from which interest shall be computed. It is provided: "That above commissions are to bear six per cent interest payable as received." It thus appears that the interest was to be due at the same time as the installments of the commission and the rate was to be six per cent, but the initial point for the computation was not specified. In R. C. L., section 23, it is said: "It seems to be generally agreed that where an instrument is payable at a future day, with interest, and nothing is said in it as to the commencement of the interest period, it is to be computed from the date of the instrument."

In one of the cases cited in support of the text, *Hackenberry* v. *Shaw,* 11 Ind. 392, the language of the stipulation was: "With six per cent interest, if not paid at maturity." The supreme court of Indiana said: "The only question raised is, whether interest should be computed from the date of the bill, or only from the time of the default. The court below allowed interest from the date of the bill. This, we think, was right. To construe the words 'with six per cent interest, if not paid at maturity,' to mean interest from the time of default merely would be equivalent to striking them out of the bill entirely. That would be the effect of the bill, without any statement as to interest."

Lord Denman, C. J., delivering the opinion of the court in *Raffey* v. *Greenwell,* 10 Ad. & E. 222, said: "Generally speaking, an installment of this sort carries interest from its date whether payable on demand or at a time specified. The reason is, that the party who makes the promise must expect to keep it; and if he does, no interest can be due from any other period than the date."

But it appears herein, and the court so found, that said commission agreement was executed on or about the first day of July, although it bears date of February 19, 1912. We think the *real* rather than the *apparent* date is what the parties had in mind. It is hardly to be supposed that, in the absence of an agreement to that effect, the parties contemplated the payment of interest for a period prior to the execution of any promise on the part of the obligor. As we compute it, the court allowed as interest about $43 in excess of the sum due. The facts fully appear in the findings, and the judgment may be modified here

by reducing the amount to $6,087, and, as thus modified, it is affirmed, respondent to recover his costs.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1919.

All the Justices concurred, except Wilbur, J., who was absent.