[S. F. No. 10403. In Bank.—December 27, 1923.]

## W. K. DUNNE, Respondent, v. J. N. COLOMB et al., Appellants.

[1] BROKER'S COMMISSIONS — VENDOR AND VENDEE — PREVENTION OF PERFORMANCE—FINDINGS—EVIDENCE.—In an action to recover from vendors brokers' commissions under a contract which provided that the same were not payable until full payment of the purchase price had been made, plaintiff's theory that the contract for the purchase and sale of the property upon which the commissions were to be paid was abandoned by mutual consent of the parties and another contract substituted therefor, and that by agreeing to abandon the first contract the defendants were themselves the cause of the purchaser's failure to perform the same, cannot be sustained, where the evidence showed that because of the purchaser's default in paying the balance of the purchase price, the vendors declared the contract forfeited and thereupon entered into possession of the property and thereafter entered into the second contract with the purchaser which was less advantageous to the latter than the first contract.

[2] ID.—FINDINGS—EVIDENCE.—In such an action, where the evidence showed that, as the vendors received nothing for their time and labor during the period they were occupying the property after the cancellation of the first contract, and as the property received the benefit of such labor, they insisted as a condition of entering upon the second contract with the purchaser that he should pay a sum equivalent to interest on the value of the property to compensate them for their trouble and loss of time in looking after the property during the said period, testimony showing payment of such sum did not raise a conflict in the evidence on the question of cancellation of the first contract.

[3] ID.—CANCELLATION OF CONTRACT—LEGAL JUSTIFICATION.—To render the cancellation by the vendors of the contract in question an act of prevention of performance of such contract, thereby making their obligation to pay the commissions absolute which was theretofore contingent, such cancellation must be without legal justification.

[4] VENDOR AND VENDEE — DEFAULT OF VENDEE — PERFORMANCE BY VENDOR—FORFEITURE.—Where the vendee is in default there is no longer any legal obligation on the vendor to proceed with the performance of the contract; the law gives him the right to regard the contract as at an end, and prescribes no penalty for the exercise of this right.

3. When broker's commissions are earned, notes, 28 **Am. St. Rep.** 546; 139 **Am. St. Rep.** 225; 44 **L. R. A.** 593.

[5] BROKER'S COMMISSIONS — CONTRACT OF BROKER—CONSTRUCTION.— The default of the vendee, with the consequent destruction of the right of the broker to his commission, was a contingency inherent in the contract in question, the risk of the occurrence of which was assumed by the broker.

[6] ID.—DUTY OF VENDORS—RECOVERY OF PURCHASE PRICE.—In such an action, the duty of the vendors to carry out the terms of their contract in good faith was at an end upon the default of the vendee, and they were under no obligation to sue upon the contract in an attempt to recover the purchase price, although such action, if successful, would have inured to the benefit of the broker.

[7] ID. — EXECUTION OF SECOND CONTRACT BETWEEN VENDORS AND PURCHASER—RIGHT OF BROKER TO COMMISSION.—In such action, assuming that the plaintiff is correct in his contention that the evidence supports the conclusion that the cancellation of the contract between the defendants and the purchaser was by mutual consent of the parties, such cancellation under the circumstances of this case did not constitute an act of prevention by the vendors of the performance of their contract with the plaintiff to pay him his commission, since it was immediately followed by the execution of a second contract between them and the purchaser, which falls strictly within the agreement between the defendants and the plaintiff for the payment to the latter of a commission for his services. The fact that it was preceded by an abortive contract between the defendants and the purchaser produced by the plaintiff has no significance.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

W. H. Spaulding for Appellants.

Norman A. Eisner for Respondent.

KERRIGAN, J.—This cause is before us after decision by the district court of appeal. The judgment of the superior court in favor of the plaintiff was by that court reversed.

7. Right of broker to commissions where owner makes sale, notes, 9 Ann. Cas. 433; Ann. Cas. 1913D, 821.

A further consideration of the questions involved satisfies us of the correctness of the conclusion reached by that court, and we adopt in large part its opinion as expressing our views, which part we quote.

"This appeal is by the defendants from a judgment against them for $6,875, commission upon the sale of real property owned by defendants. The plaintiff recovered over $4,000 of the amount of the judgment as a commission directly due to him for producing a purchaser for the property of defendants and the balance upon an assignment to him of a commission alleged to have been due to Frank Mooradian upon the same transaction.

"By the terms of the written contract between the parties introduced in evidence, the commissions to Mooradian and Dunne were not to be payable until the purchaser paid in full the purchase price for the property. The evidence showed, without conflict, that the purchase price was never paid. Plaintiff contended at the trial and secured his judgment upon the theory that the contract for the purchase and sale of the property upon which the commission was to be paid was abandoned by mutual consent of the parties and another contract substituted therefor; that with this second contract plaintiff is not concerned, but is entitled to his commission because the defendant, by agreeing to abandon the first contract, was himself the cause of the purchaser's failure to perform the same.

[1] "With all due deference to the rule invoked by respondent and applicable where a conclusion as to facts has been arrived at by a jury upon conflicting evidence, we are unable to find in the record evidence sustaining his theory of the case. The contract between the owners of the property and the brokers was introduced in evidence. It provided that certain commissions were to be paid to said brokers if a contemplated purchaser, one Hagopian, should enter into a contract for the purchase of the land on conditions and terms satisfactory to the vendors and if said Hagopian should pay in full the purchase price and considerations for said property. It was admitted by the vendors that Hagopian entered into a contract satisfactory and acceptable to them, by which he agreed to purchase the land for $175,000. The defendant Colomb was called as a witness for the plaintiff and testified that Hagopian paid $10,000

as a first payment under such contract and the unpaid balance was to bear interest at seven per cent. This contract was signed on May 29, 1920. By its terms Hagopian was to pay the balance of the principal, $165,000, on December 1, 1920. The witness Colomb stated that Hagopian was unable to do this and was in default upon his contract; that, thereupon, the vendors notified Hagopian that his contract was forfeited. The vendors then went upon the property and operated it throughout the month of December, 1920. About December 20, 1920, the vendors and Hagopian again negotiated for the purchase and sale of this property. The result of these negotiations was that a contract was executed sometime after the middle of January, 1921, and antedated January 1, 1921, by which Hagopian agreed to purchase the property for $175,000 and to pay eight per cent upon the unpaid balance and to give as security for the performance of his obligations thereunder a deed of trust upon another ranch owned by him.

"With the positive testimony in the record, standing uncontradicted, that Hagopian was in default under his contract on December 1, 1920, and that notice of cancellation was served upon him and that the vendors, thereupon, entered into possession of the property and later, together with Hagopian, served notice upon the bank that held the papers in escrow that the contract was forfeited by Hagopian and all rights thereunder were at an end, we do not see any basis for the argument of the respondent that the performance of the contract by the purchaser was prevented by the vendors. Apart from this positive testimony of the vendor, the inference from the written documents themselves seems to support appellants' contention. It is incredible that Hagopian would have agreed to abandon his contract of May 29, 1920, under which he had paid $10,000, and under which he was obligated to pay only seven per cent interest upon the unpaid balance and was obligated to deposit no collateral as security, and enter into another contract by which he was forced to pay $175,000 with no credit for the $10,000 already paid, and to pay eight per cent interest upon the unpaid balance and also to give a deed of trust upon other property as security, unless he had forfeited his rights under the more advantageous contract. The positive evidence of Colomb, called as a witness by plaintiff, not only stands uncontra-

dicted that Hagopian forfeited his contract by noncompliance with its terms, but such testimony is corroborated by the action of Hagopian in acceding to the terms of a new contract regarding the same property, much less advantageous to him than the contract of May 29, 1920. Why should not the first contract have been retained by Hagopian if it had not been forfeited?

[2] "We find no real conflict in the evidence upon this question of forfeiture of Hagopian's rights under the contract. Respondent admits that the testimony of his witness Colomb is that Hagopian forfeited his contract, but seeks to establish a conflict in the evidence so as to sustain the findings by pointing out that the testimony of Colomb was that, although the contract had been forfeited and canceled on December 1, 1920, for noncompliance with its terms, nevertheless, Hagopian paid interest upon the balance due thereunder until January 1, 1921, and that the second contract was antedated January 1, 1921, so that the defendants did not lose any interest. Respondent infers from this that the first contract was in effect until the second contract became effective and that one was merely substituted for the other. It is true the statement above recited regarding the payment of interest appears in the record, but it does not stand unexplained therein. It cannot be taken apart from the explanation which the witness had a right to make and which he did make. He stated that after the forfeiture of the contract by Hagopian, the vendors took possession of the land and worked upon it until the time when the property was turned over to Hagopian under the second contract. As they received nothing for their time and labor during the period they were occupying the property, and as the property received the benefit of such labor, the vendors insisted as a condition of entering upon the second contract with Hagopian that he should pay a sum equivalent to interest on the value of the ranch to compensate them for their trouble and loss of time in looking after the property during the period when there was no contract in existence between the parties. This is a reasonable explanation; it stands uncontradicted in the record, and it must be taken in connection with the statement that interest was paid for the month of December. So taken, it creates no conflict, even

by possible inference, with the positive evidence of the cancellation of the contract.''

But conceding, for the sake of argument, merely, that there was some evidence in the case which would justify the jury in finding that the first contract was canceled by mutual consent, such finding, in view of the admitted default of Hagopian, the vendee, affords no foundation for the judgment in plaintiff's favor. The respondent's contention in support of the judgment is that by consenting to the cancellation of the contract with Hagopian the defendants voluntarily put it out of their power to perform their obligation to pay to the plaintiff his commission upon full payment by Hagopian of the price of the land, thereby preventing performance and making absolute that obligation, theretofore contingent.

We cannot agree with this contention. [3] To render such cancellation an act of prevention entailing the consequence claimed by respondent it must be without legal justification. [4] Where the vendee is in default there is no longer any legal obligation on the vendor to proceed with the performance of the contract. The law gives him the right to regard the contract as at an end. The law prescribes no penalty for the exercise of this right. [5] The default of the vendee, with the consequent destruction of the right of the broker to his commission, was a contingency inherent in the contract, the risk of the occurrence of which was assumed by the broker.

The main case relied upon by the respondent in support of his contention, namely, *Ratzlaff* v. *Trainor-Desmond Co.,* 41 Cal. App. 586 [183 Pac. 269], recognizes this. It is stated in that opinion: ''Respondent (the broker) assumed the responsibility of losing his commission if said Stewart and Harrison (the vendees) defaulted. But he claimed, and still contends, that his commission became due by reason of the default of the appellant (vendor), and, manifestly, to take advantage of that default, he must show that he had not already lost his right in consequence of the forfeiture of the said Stewart and Harrison contracts.''

That case differs from the one at bar in the essential respect that the vendor there created the default of which the broker availed himself. Apart from this essential difference, there is some broad language used by Justice Burnett,

the writer of the opinion, which we think has misled the respondent. It is said in the opinion: "If appellant consented to such cancellation it would, of course, by this voluntary act, in a legal sense prevent the payment of the purchase price. The commission contract necessarily implied that the appellant would act in good faith and do nothing to prevent, or even discourage or embarrass the completed purchase of the property. Indeed, according to the plainest principles of honesty and fair dealing, appellant was required to do everything possible to promote the purchase of the land by Stewart and Harrison, and thereby to aid in securing the purchase price, to the end that respondent might receive compensation for the services which he had performed."

The authority cited by Justice Burnett for his broad statement of the rule is section 690 (1426) of Bishop on Contracts, and is as follows: "If one voluntarily puts it out of his power to do what he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not arrived."

In *Ratzlaff* v. *Trainor-Desmond Co., supra,* the vendor put it out of his power to perform by voluntarily assigning the contracts with the vendees, so that thereafter it was not entitled to receive further payments thereon, which payments were the source from which the broker's commission was to be paid. Those sums thereafter were paid to the assignee. The vendees were not in default; but the vendor assigned valid subsisting contracts, thus transferring to another the right to receive installment payments which were to be the source of the broker's compensation. This was correctly held to be a voluntary act which put it out of the power of the vendor to comply with his contract, namely, to pay over to the broker his commission *pro tanto* as payments on the contracts were received.

The statement in that case that the vendor *must do everything possible to aid in the performance of the contract* so as to enable the broker to receive his commissions, is not to be held to go so far as to forbid the vendor to exercise a right given him by law. It only purports to mean that the vendor must act in good faith in the carrying out of his own obligation to the vendee. He must loyally abide by his

contract. This is apparent from the language of Justice Burnett in the same case when he says: "But by this conveyance and the assignment to said company by appellant of all its interest in said Stewart and Harrison contracts it waived all interest in the payment of said purchase price, and violated its implied obligation to promote the purchase of the property by Stewart and Harrison. The commission contract clearly contemplated that appellant would not change its attitude toward the property to the detriment of the respondent."

[6] In the case at bar the duty of the vendors to carry out the terms of their contract in good faith was at an end upon the default of the vendee. They were under no obligation to sue upon the contract in an attempt to recover the purchase price, although such action if successful would have inured to the benefit of the broker. (*Prince* v. *Selby etc. Co.*, 35 Cal. App. 684, 687 [170 Pac. 1075]; *Seymour* v. *St. Luke's Hospital*, 28 App. Div. 119 [50 N. Y. Supp. 989]; *McPhail* v. *Buell*, 87 Cal. 115 [25 Pac. 266].)

[7] Finally—and still assuming that the respondent is correct in his contention that the evidence supports the conclusion that the cancellation of the contract between the defendants and Hagopian was by mutual consent of the parties—such cancellation under the circumstances of this case did not constitute an act of prevention by the vendors of the performance of their contract with the plaintiff to pay him his commission, since it was immediately followed by the execution of a second contract between them and Hagopian, which falls strictly within the agreement between the defendants and the plaintiff for the payment to the latter of a commission for his services. The fact that it was preceded by an abortive contract between the defendants and the purchaser produced by the plaintiff has no significance. The situation is not different from that which would have existed had the vendee, twenty-four hours after entering into the first contract, come to the vendors and said: "I find I shall not be able to perform the contract. Will you modify it by extending the time of payment?" and the vendors had agreed to such extension and executed a new contract. Would it then be contended that thereby the broker had lost his right to his commission, or that it was confined to the contingency of full performance of the first contract,

or that by the modification the vendors' obligation to pay it became absolute and immediate? We think not. And the fact that six months intervened between the first and second contracts makes no difference in principle. If Hagopian should make full payment for the ranch in accordance with the terms of the second contract, the plaintiff will then be entitled to the commission stipulated for in his agreement with the defendants.

There being, as we have seen, no evidence that the performance of the contract between the plaintiff and the defendants was prevented by any act of the latter, the judgment in favor of the plaintiff is unsupported and must be reversed. It is so ordered.

Lawlor, J., Lennon, J., Wilbur, C. J., Waste, J., and Seawell, J., concurred.