**ABEGGLEN v. BURNHAM et al.**

No. 2647.

United States District Court
D. Idaho, S. D.
June 14, 1950.

E. B. Taylor, Hailey, Idaho, W. G. Bissell, Gooding, Idaho, Branch Bird, Gooding, Idaho, for plaintiff.

J. D. Skeen, Salt Lake City, Utah, Oscar W. Worthwine, Boise, Idaho, for defendants.

CLARK, District Judge.

The plaintiff alleges in his amended complaint that he is, and was at all times mentioned in the complaint, a real estate broker licensed under the laws of the State of Idaho, with his principal place of business at Hailey, Idaho; that on April 29, 1948, the defendants listed with him a certain ranch, together with certain personal property thereon, which ranch and personal property are described in the contract appointing plaintiff to act as agent of defendants in procuring a buyer. This "listing" contract or contract of employment was in writing and is set out in full in the complaint. It provides for a commission of 5% on the sale price of $140,000, less $1,000 or a total commission of $6,000. On May 15, 1948 the contract was modified to provide that the commission as stated in the original contract dated April 29, 1948, would be paid as follows: "$2,000.00 when the first $25,000.00 is paid and $2,000.00 when the second $25,000.00 is paid, and the remaining $2,000.00 when the full down payment of $70,000.00 is paid on the purchase price of this Cove Ranch, making a total of $6,000.00 Commission".

That while the contract was in effect the plaintiff procured purchasers who were able, ready, and willing to purchase the listed property; that defendants entered into an agreement on May 11, 1948, with these purchases, which agreement was satisfactory and agreeable to the defendants; and that thereafter, on August 12, 1948, this agreement was modified by a new written agreement between the same parties. The original agreement and the modified agreement are set out in full in the complaint.

Plaintiff alleges further that upon the execution and delivery of the agreement dated May 11, 1948, the purchasers entered into possession of the real and personal property concerned, did certain work on the premises, made certain improvements, paid all taxes due, paid water assessments, and in general operated the property in accordance with the contract of sale existing between them and the defendants; that certain payments were made by the purchasers to defendants on the purchase price and certain credits on the account were given by the defendants to the purchasers, all in the total amount of $31,983.-93, these payments and credits being set out in detail in the complaint; and that said amount has been forfeited and paid or will be paid by the purchasers on account of the purchase price of the real and personal property; that thereafter and at the special instance and request of the defendants, and without the knowledge, consent or approval of the plaintiff, the defendants entered into an agreement with the purchasers whereby it was voluntarily and mutually agreed between the defendants and the purchasers that the contract of sale should be terminated and possession restored to the defendants. In other words, plaintiff alleges that the contract of sale was cancelled without his knowledge or consent. Plaintiff further alleges that the defendants thereafter sold the property to some third person; that no part of plaintiff's commission of $6,000 has been paid, though demand has been made upon the defendants and each of them for the payment thereof; wherefore plaintiff prays that he have judgment against the defendants, and each of them, in the amount of $6,000 with interest thereon at the rate of 6% per annum from April 4, 1949, and for costs of suit.

In their answer to plaintiff's amended complaint, defendants make certain denials and certain admissions, but principally and substantially they admit that plaintiff was their agent in the purported sale of the property but allege that they were wrongfully induced to sign the agreement making plaintiff their agent and that they were wrongfully induced to sign the contract of sale, in that plaintiff made misrepresentations as to the ability of the purchasers to comply with the terms of the contract of sale. Specifically, defendants allege that plaintiff made misrepresentations in the following particulars: That on or about May 15, 1948, plaintiff represented to defendants that one of the purchasers, Oriel Randall, was the owner of a farm at Eden, Idaho whereas the title to the farm was actually in the name of his deceased wife and the property was subject to a mortgage of approximately $5,000 and parts of the farm were being purchased under contract upon which there was a large amount upaid; that plaintiff at the same time represented to defendants that another of the purchasers, Carl H. Randall, was the owner of a farm at New Plymouth, Idaho, which plaintiff exhibited to defendants as Carl H. Randall's farm, whereas he was not the owner of the farm exhibited or of any farm whatsoever; that plaintiff at the same time represented to defendants that another of the purchasers, Edward Randall, was the owner of a farm at Parma, Idaho, whereas the property was in fact subject to a mortgage of approximately one-half of its value; that plaintiff represented such farms to be free of mortgage indebtedness and proposed that the defendants sell the property here concerned to the purchasers and take, as security for the payment of approximately one-half of the purchase price thereof, the negotiable promissory note of each of the three purchasers for the sum of $25,000 to be secured by a mortgage for the amount of the note on each of their respective farms; that defendants accepted the proposal because they believed, from the representations made by plaintiff, that the farms were free from indebtedness; that the purchasers agreed to execute and deliver mortgages on their farms; that they did not do so, although they went into possession of the defendants' ranch and personal property immediately after signing the contract of sale. Defendants admit entering into the modified agreement, or contract of sale, on August 12, 1948, with the purchasers; and admit the cancellation of the contract. They deny that any forfeitures were made by the purchasers and

they allege that no profits were derived by the defendants from the transaction, and that on the contrary the defendants suffered damages by reason thereof.

Narrowed down, the issue in the case is this: Plaintiff claims his commission under his contract of employment, alleging that he procured bona fide purchasers and that a bona fide sale was made to these purchasers procured by him. Defendants admit that plaintiff was employed as their agent and that he procured purchasers, but allege that the purported transaction was induced by material misrepresentations by the plaintiff, on which the defendants relied; that the representations were false and were known by plaintiff to be false or were made by the plaintiff in reckless disregard of the truth; that there was therefore no bona fide sale and the plaintiff did not earn a commission. The alleged misrepresentations related to the ability of the purchasers to furnish mortgages on the three farms as referred to earlier herein.

 The evidence is conclusive that two of the purchasers, Oriel Randall and Edward Randall, did execute and deliver mortgages on their respective farms as agreed in the original contract of sale. These two mortgages are, in fact, still held by the defendants. It is also conclusive from the evidence that by agreement dated August 12, 1948, the earlier agreement pertaining to the furnishing of mortgages by each of the three purchasers on their respective farms was modified by mutual agreement of the defendants and the purchasers to provide for certain other securities in lieu of the mortgage which, under the original agreement, Carl Randall was to have executed and delivered to the defendants. It cannot be doubted that by entering into this modified agreement the defendants acquiesced in the substitution of securities and waived any right they might have had to rescind the original contract of sale. In short, as late as the date of this modified agreement, August 12, 1948, defendants still regarded the Randall brothers as bona fide purchasers, "able, ready and willing" to buy the property. It must also be noted that at the

time the contract of sale was cancelled by mutual agreement of the defendants and the purchasers, the purchasers were not in default on the contract in any respect, the only previous default having been waived by defendants as discussed above. It is clear from the evidence that the agreement to cancel the contract was entered into without the knowledge, consent or approval of the plaintiff.

There is some dispute as to how much was paid by the purchasers on the purchase price. Exhibits 14 and 15 show payments and credits totaling $22,383.16; it would appear from other evidence to amount to well in excess of $25,000.

The pertinent facts are that plaintiff was engaged by defendants, under a contract in writing, to sell certain property; that he procured purchasers, and agreement was entered into and later modified; that the purchasers went into possession of the property immediately following execution of the original agreement; that the purchasers made substantial payments on the purchase price, the exact amount of which is subject to dispute; that subsequently, and while the purchasers were not in default on their contract to purchase, the contract was cancelled with the mutual consent of defendants and purchasers and without the knowledge, consent or approval of the plaintiff.

 The question before the Court is the rights of a real estate broker to his commission under the state of facts existing here. The general rule is that after a contract between the principal and a customer produced by the broker has been concluded, its subsequent modification or cancellation does not defeat or affect the right of the broker to a commission, unless it is done at his request or with his consent or knowledge and acquiescence.

 The Court is of the opinion that the plaintiff was free from misconduct in his dealings with the defendants, also if there was any misunderstanding the defendants acquiesced therein when they entered into the modified agreement with the purchasers after acquiring actual knowledge of the failure of Carl Randall to deliver the mortgage on his farm, and any

claims of misrepresentation were thereby waived, and that the case at bar falls within the general rule just stated. It is true that the contract of employment on which plaintiff relies provided for the payment of commissions pro rata as the purchase price was paid and that $2,000 of the commission was to have been paid when $25,000 was paid on the purchase price. If plaintiff's recovery were to be limited by this provision of the contract of employment, it would be of primary importance to determine exactly how much was actually paid in the form of cash and credits. However, the rule has been laid down that where a broker's contract with the owner provides for payment of commissions pro rata as the purchase price is paid, the broker is entitled to his entire commission upon cancellation of the owner's contract with the purchaser by mutual consent of the owner and purchaser when the contract is cancelled without any agreement with the broker, at least where the purchaser is not yet in default. Ratzlaff v. Trainor-Desmond Co., 41 Cal.App. 586, 183 P. 269. This rule is applicable to the case at bar, for the defendants have abandoned their contract of sale and have made it impossible to carry out the contract with the purchasers procured by the plaintiff. The cancellation of the contract by mutual consent of the defendants and purchasers was no concern of the plaintiff. If he earned a commission at all, he earned it on the full price for which the property was sold, and his commission could not be reduced by the subsequent transaction.

It is therefore immaterial as to what amounts have been paid or credited and are yet to be paid on the purchase price, except in so far as the payments and credits indicate the bona fide nature of the transaction and show that the purchasers were not in default at the time the contract was cancelled. Plaintiff is entitled to recover his full commission; interest will be allowed from date of judgment.

Counsel for plaintiff will prepare findings of fact, conclusions of law and decree and serve copy on opposing counsel; submitting the original to the Court for approval.