[Sac. No. 1189. Department Two.—September 7, 1904.]

WALTER E. WILLIAMS, Appellant, v. ASHURST OIL, LAND, AND DEVELOPMENT COMPANY, Respondent.

SPECIFIC PERFORMANCE — CONTRACT FOR SHARES OF CAPITAL STOCK— PAROL EVIDENCE—"POOL STOCK."—In an action to enforce the specific performance of a written contract for a certain number of shares of the capital stock of an oil, land, and development company, in consideration of a deed to it of oil-rights, the contract being silent as to any certificate of stock, parol evidence is admissible to show that at the time of the execution of the contract it was orally agreed between the parties thereto that the shares should not be of "treasury stock," but of "pool stock" of the corporation,

of which no certificates were to be issued until the expiration of five years, but only special receipts showing the ownership thereof.

ID.—PAROL EVIDENCE UNDER WRITTEN CONTRACT.—If a written contract does not show upon its face that it was intended to express the whole agreement between the parties, parol evidence is admissible to show other conditions or explain latent ambiguities.

ID.—CONTEMPORANEOUS CONSTRUCTION.—The contemporaneous and practical construction of a contract by the parties is strong evidence as to its meaning, if its terms are equivocal.

ID.—CORPORATIONS—RESTRICTIONS AS TO STOCK.—Restrictions as to the capital stock of a corporation may be created by a contract mutually agreed to by the stockholders.

ID.—ACTION BY ASSIGNEE—TENDER OF SHARES OF "POOL STOCK"—JUDGMENT—COSTS.—In an action by the assignee of one of the parties to the written contract to enforce a specific performance of the contract as to the shares of the assignor, where it appears from his testimony that he was told that it was "pool stock," and that no certificate could be issued for five years, he can claim no protection as an innocent purchaser; and where the corporation defendant tendered to plaintiff the shares of "pool stock" owned by his assignor, and kept the tender good, the court properly rendered judgment for such shares of "pool stock," and that the defendant recover its costs.

APPEAL from a judgment of the Superior Court of San Joaquin County. Edward I. Jones, Judge.

The facts are stated in the opinion.

A. H. Carpenter, for Appellant.

The oral evidence was inadmissible. (Civ. Code, sec. 1625; *Board of Education* v. *Grant,* 118 Cal. 39; *Schurtz* v. *Romer,* 82 Cal. 474; *Peabody* v. *Phelps,* 9 Cal. 213; *McDonald* v. *Poole,* 113 Cal. 437; *Benson* v. *Shotwell,* 103 Cal. 163; *Smith* v. *Taylor,* 82 Cal. 533; *Erenberg* v. *Peters,* 66 Cal. 114; *Harloe* v. *Lambie,* 132 Cal. 133.)

O. B. Parkinson, for Respondent.

Evidence as to the oral agreement as to "pool" stock did not contradict the written agreement, but was admissible to explain it. (Civ. Code, secs. 1642, 1647, 1649; *Kreuzberger* v. *Wingfield,* 96 Cal. 253; *Sivers* v. *Sivers,* 97 Cal. 521; *Balfour* v. *Fresno Canal etc. Co.,* 109 Cal. 221.) Holdings of

stock may be combined in pool.    (*Smith°v. San Francisco etc. Ry. Co.*, 115 Cal. 584, 595.[1])

COOPER, C.—This action was brought to compel the specific performance of a contract made by defendant with plaintiff's assignor for the delivery of sixty-five hundred shares of the capital stock of defendant, in payment for a conveyance made by plaintiff's assignor to defendant of the oil in certain lands. Findings were filed and judgment ordered that plaintiff is entitled to receive from defendant "six thousand five hundred shares of the capital stock of said corporation of the class designated as 'pool stock' upon the delivery to said corporation by said plaintiff for cancellation to the extent of said number of shares" of the agreement made by the defendant and plaintiff's assignor as to the shares.

It was found that prior to the commencement of the action the defendant tendered to plaintiff the said six thousand five hundred shares of "pool stock" and that defendant has kept its tender good, and hence the court ordered that defendant recover its costs.

Plaintiff has appealed from the judgment on the judgment-roll and a bill of exceptions.

The principal contention is as to whether the plaintiff is entitled to ordinary certificates of shares of the capital stock of defendant, or to the kind of stock designated in the judgment.

The court found that on the seventh day of April, 1900, the defendant made the following agreement with plaintiff's assignor:—

"This agreement made this 7th day of April, 1900, between The Ashurst Oil, Land, and Development Company, a corporation, and Benjamin F. Thompson, E. E. Thrift, and T. D. Kennard, witnesseth: That for and in consideration of the execution and delivery of a certain deed of conveyance of oil rights this day made by the parties of the second part herein to the party of the first part herein, the party of the first part agrees to deliver upon demand to the parties of the second part 21,154 shares of the capital stock of the corporation named herein as the party of the first part, or upon

---

[1] 56 Am. St. Rep. 119, and note.

demand by any one of the parties of the second part, will de-
liver 7,051 shares of said stock to such party making such
demand.

(Signed)

"THE ASHURST OIL, LAND, AND DEVELOPMENT COMPANY.

"By O. B. PARKINSON, Secretary.

"JACOB SIMON, President."

The court further found as follows: "That the capital
stock of said defendant corporation was at the time said
above-mentioned agreement was entered into divided into two
classes: First: What was known as 'Treasury Stock,' being
the regular ordinary stock of the corporation, upon which
certificates in regular form were duly issued and sold; second:
What was known as 'Pool Stock,' upon which no certificates
of stock in regular form should be issued for at least the
space of five years from said 7th day of April, 1900, but for
which special receipts, showing ownership of said stock, should
be issued to the holders of said stock as evidence of their
ownership. That at the time of entering into said agreement
between said Kennard and said corporation, said distinction
between said stock was explained to said Kennard, and it
was agreed then and there between said Kennard and the
promoters of said corporation, and between said Kennard
and said corporation, that said stock mentioned in said above-
quoted agreement was 'Pool Stock,' and that no certificate
should be issued to said Kennard or his assigns thereon, until
the expiration of said period of five years; and, further, that
said agreement above quoted was at said time simply held
by said Kennard as merely a memorandum to be held until
the full agreement containing all of the propositions as agreed
to orally should be reduced to writing. That the shares of
stock mentioned in said agreement were and are the 'Pool
Stock' of said corporation."

It seems clear that if it be conceded that the latter finding
is correct the judgment is the legal conclusion therefrom.
It is earnestly urged, however, that the part of the finding
that the agreement had reference to "pool stock," and that
no certificate in the regular form should issue until the expira-
tion of five years, is not supported by the evidence.

The witness Abrams testified that he made the agreement
with Kennard (the plaintiff's assignor) as to the kind of

stock he was to get on the seventh day of April, 1900, in the presence of Dr. De Vinney. The witness further testified: "We had a talk with Mr. Kennard in this way: I stated to Mr. Kennard that the company was formed with five hundred thousand shares, of which we set aside 275,000; those 275,000 shares were divided into thirteen blocks of 21,154 shares each. I told him just exactly what we were doing with this stock, that we were dividing this 275,000 shares into thirteen blocks of 21,154 shares each; that we would give him one of these blocks for the oil-rights to these lands, and that we would pool this stock and not to issue any certificates on this stock until the expiration of five years"; and that Kennard agreed to the arrangement as detailed by the witness. The witness Parkinson testified substantially as did Abrams. He said: "I told him [Kennard] that as it was 'pool stock' we of course could not give him a certificate, but we could give him an equitable assignment of any number of shares that he wished." This conversation referred to a sale of some stock made by Kennard to one Butler.

Shortly after the agreement of April 7th the plaintiff's assignor sold some stock to one Galway and some to one Butler. In cross-examination the witness Kennard said: "I sold some of my stock to Mr. Galway and gave him a written assignment for it. I sold part of the 7,054 shares of Galway. I did not present the agreement [plaintiff's exhibit 2] for cancellation at any time. I went to Mr. Parkinson's office with Mr. Galway, and asked him to explain to Mr. Galway that my stock was 'pool stock' and that he [Galway] could not get any certificate for five years. I asked Mr. Parkinson to explain this to him, which he did, and wrote out an assignment to Mr. Galway, which I signed. I also sold some of my stock in a similar manner to Mr. C. J. Butler, and took him to Mr. Parkinson's office, and requested Mr. Parkinson to explain to Mr. Butler how it was that he [Butler] could not get any certificate of stock, because this was the kind known as 'pool stock.' These transactions were had, I think, in May, 1900."

The above testimony supports the finding. The transactions in regard to the sale of stock by Kennard to Galway and Butler show how Kennard understood the contract as to the kind of stock he was to get.

"The contemporaneous and practical construction of a contract by the parties is strong evidence as to its meaning if its terms are equivocal." (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 180.) Kennard would not have asked Parkinson to explain to Galway and to Butler that his stock was "pool stock" unless he so understood his agreement himself. Having made the agreement as to the time at which he would be entitled to regular shares of stock, Kennard was bound by it, and plaintiff as his assignee is entitled to no greater rights. He has been given the precise kind of stock that plaintiff agreed to take as consideration. "Restrictions may be created by a contract mutually agreed to by the stockholders." (Cook on Stock and Stockholders, sec. 408.) It is claimed that it was error to admit parol evidence for the purpose of contradicting or varying the terms of the written contract of April 7, 1900. But the evidence was not for the purpose of contradicting or varying the terms of the written contract. The agreement did not refer in language to certificates of shares, but "shares of the capital stock of the corporation." The evidence was introduced for the purpose of showing that the terms "shares" referred to and was understood as "pool shares." The writing did not show the kind of shares that Kennard was to receive, but the evidence showed that out of five hundred thousand shares two hundred and seventy-five thousand shares were "pool stock," on which no certificates were to be issued until the expiration of five years, and that the shares Kennard was to get were of the "pool shares." If the writing does not show upon its face that it was intended to express the whole agreement between the parties, parol evidence is admissible to show other conditions or explain latent ambiguities. (*Kreuzberger* v. *Wingfield*, 96 Cal. 255; *Sivers* v. *Sivers*, 97 Cal. 521; *Balfour* v. *Fresno Canal etc. Co.*, 109 Cal. 221.)

Plaintiff cannot assume the role of innocent purchaser, even if that doctrine could be invoked in a case like this. He testified that he was told that no certificates could be issued for five years, that it was "pool stock," and that he was to pay five thousand dollars for the shares when he could realize on them. It is claimed that it was the duty of defendant to issue the stock when fully paid up. Defendant has offered to issue stock to plaintiff, and the judgment is, that it issue

sixty-five hundred shares of pool stock to plaintiff. A certificate of stock is a mere muniment of title. It is evidence of ownership of the stock. (Cook on Stock and Stockholders, sec. 14.)

It is not argued that the agreement as to "pool stock" was void, and hence it is not necessary to pass on the question. The offer to issue the stock was in conformity with the agreement made by plaintiff and defendant. It is not necessary to discuss other minor questions argued. We do not deem them of sufficient importance to justify a reversal of the case.

The judgment should be affirmed.

Chipman, C., and Harrison, C., concurred.

For the reasons given in the foregoing opinion, the judgment is affirmed.

McFarland, J., Henshaw, J., Lorigan, J.