[Civ. No. 4045. First Appellate District, Division Two.—November 25, 1921.]

## ROBERT P. HENIKA et al., Respondents, v. ANNA A. LANGE, Appellant.

[1] LANDLORD AND TENANT — LEASE OF FARM LAND — CHARACTER OF LAND — NATURE OF CROP — PAROL EVIDENCE. — Where a lease of farming land required the lessor to install a pumping plant of sufficient size to irrigate the land and to purchase the seed for the first crop, but did not specify the kind of crop to be raised, parol evidence was admissible in an action for alleged breach of such covenants to show the character of the land and the understanding of the parties as to the crop to be raised.

[2] WRITTEN CONTRACT—PAROL EVIDENCE—PORTION NOT INCLUDED.— Where a portion only of the contract between the parties has been reduced to writing it is proper to allow parol evidence as to the portion of the agreement not included in the writing.

[3] ID.—PAROL EVIDENCE OF SURROUNDING CIRCUMSTANCES—INTENT OF PARTIES.—Oral testimony with reference to the circumstances surrounding the making of a written contract is admissible when an understanding of such surrounding circumstances is necessary in order to ascertain the intent and meaning of the parties.

[4] LANDLORD AND TENANT—INSTALLATION OF PUMPING PLANT—FURNISHING OF WELLS—DUTY OF LESSOR—CONSTRUCTION OF LEASE.—Where farming land was leased together with a pumping plant of sufficient size to irrigate the land, and the lessee was required to run the plant continuously during the growing season of the crop, and the lessor reserved the exclusive right to put down wells, the lessor was not only required to furnish machinery adequate to irrigate the land but also to furnish wells of sufficient capacity to deliver sufficient water.

[5] CONTRACT—CONSTRUCTION BY PARTIES—EFFECT OF.—The contemporaneous and practical construction of a contract by the parties is strong evidence of the meaning of equivocal terms.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. M. Chapman and Ward Chapman for Appellant.

F. E. Borton and H. E. Schmidt for Respondents.

LANGDON, P. J.—This action was commenced by the plaintiffs, who were lessees of the defendant, to recover damages in the sum of $4,800, alleged to have been sustained by them because of the failure of the defendant to perform the covenants of a lease upon her part to be performed. Thereafter an action was commenced by the defendant against the plaintiffs, in which she alleged that the plaintiffs had failed to comply with the terms of the lease on their part to be performed and had abandoned the property, by reason of which facts defendant had suffered damage in the sum of $6,250.

In the first action demurrer was interposed to the complaint and overruled, and an answer was filed denying the material allegations of the complaint. In the second action defendants in that action filed an answer and cross-complaint, in which they alleged a rescission of the contract by them, and sought to recover $4,800 as the reasonable value of their services performed under the lease. Upon motion, the two actions were consolidated and the case was tried upon a stipulation that the amended complaint of Anna Lange in the second action be construed as a cross-

complaint in the first action and said cross-complaint be deemed denied.

[1] The action involves the construction of a lease entered into between the parties. One of the objections made by appellant is that the court erred in admitting parol evidence upon which it based its finding that the land described in the lease at the time of making said lease was heavily impregnated with alkali and unsuitable for raising any crop other than rice, and it was contemplated, understood, and agreed between the parties that said lands were to be planted to rice for such successive years as should prove necessary in order to leach and purify the land and permit the successful planting of other crops.

Without setting out here the full text of the lease, it will be sufficient to say that it provides that a pumping plant was to be installed by the lessor of sufficient size to irrigate the land demised, and it, together with the land, was the subject of the lease. The size of a plant sufficient to irrigate this land would depend somewhat upon the nature of the crop to be grown thereon, as it is a matter of common knowledge that different crops require very different amounts of water. The contract also provides that the lessees were to run the pumping plant continuously during the growing season of the crop. It provides, further, that the lessor was to purchase the seed for the first crop and that such seed was to be paid for by the lessees out of the proceeds of the first crop. As rental for the land and pumping plant, the lessor was to receive a percentage of the crop raised.

It became necessary for the trial court to ascertain by parol evidence what kind of seed was to be furnished by the lessor, what capacity of pumping plant was to be installed and furnished by her, and in what manner it was to be operated—all of these things depending upon the nature of the crop to be raised upon the land. The kind of crop to be raised was a matter not touched upon in the lease. The evidence regarding the character of the land and the crop to be raised was admissible under two well-established exceptions to the rule that where a contract is reduced to writing there can be, as between the parties, no evidence of the terms of the agreement other than the contents of the writing. [2] The first exception is that

where a portion only of the contract between the parties
has been reduced to writing it is proper to allow parol evi-
dence as to the portion of the agreement not included in the
writing. (*Johnson* v. *Bibb Lumber Co.*, 140 Cal. 95, 98 [73
Pac. 730]; *Williams* v. *Ashurst*, 144 Cal. 619 [78 Pac. 28].)
The portion of the contract between the parties which was
not reduced to writing, in the instant case, was the portion
regarding the kind of crop to be grown upon the land.
[3] The second exception warranting the admission of this
evidence is that contained in section 1860 of the Code of
Civil Procedure, i. e., that oral testimony with reference to
the circumstances surrounding the making of a written con-
tract is admissible when an understanding of such surround-
ing circumstances is necessary in order to ascertain the intent
and meaning of the parties. (*Morffew* v. *San Francisco etc.
R. Co.*, 107 Cal. 587, 600 [40 Pac. 810]; *Balfour* v. *Fresno
Canal Co.*, 109 Cal. 221, 225 [41 Pac. 876]; *Jersey Farm Co.*
v. *Atlanta Realty Co.*, 164 Cal. 412, 417 [129 Pac. 593]; *Jersey
Island Dredging Co.* v. *Whitney*, 149 Cal. 269, 273 [86 Pac.
509, 691].) The testimony introduced under this exception
was as to the character of the land, which was one of the sur-
rounding circumstances of the parties in making their agree-
ment. Such testimony, together with the testimony as to
the understanding of the parties upon a matter not men-
tioned in the lease, i. e., the nature of the crop to be
planted on the land, was clearly admissible under the two
rules of law just discussed, and such testimony abundantly
sustains the finding made upon the subject.

Objection is also made to the finding as to the period of
the year at which rice should be planted in order to secure
the best results. There is evidence in the record to sup-
port this finding, and it having been made upon conflicting
evidence, it is not subject to review here.

[4] Appellant complains of the finding that the clause
in the lease requiring the defendant to furnish a pumping
plant of sufficient size to irrigate the land was understood
by the parties to mean that the said defendant would have
completed and equipped with the necessary engine, pump,
and appliances, a well or wells on said premises of sufficient
size, capacity, and equipment to deliver upon the surface
of the ground sufficient water to irrigate all the land de-
scribed in the lease; and that said well would be so com-

pleted by defendant in time to permit of the successful planting of rice in the year 1919.

The contract itself states "that the said party of the first part [Lange] does by these presents lease and demise unto the said party of the second part, all of the southeast quarter [describing the land], together with a pumping plant of sufficient size to irrigate the above described land properly." It further provides: "The party of the second part is to run this said pumping plant continuously during the growing season of the crop." It is clear that pumping machinery without a water supply would be useless to irrigate the land, and plaintiffs, assuredly, were not expected to run pumping machinery without water to pump. The contract itself meets the situation by providing that "the party of the first part reserves all the right to put down wells or any other improvements she wishes to make during the term of this lease." Thus the plaintiffs were precluded by the terms of the lease from drilling wells on the premises, as that privilege was reserved by the defendant. The oral testimony received by the court to make clear what the parties contemplated by the term "pumping plant" as used in the contract was clearly admissible, and fully establishes the fact that the parties intended that the defendant was to furnish wells and pumping machinery sufficient to irrigate the land. At the time the lease was made there were two wells of a depth of about one hundred feet which had just been drilled upon the land, and the defendant installed a pump which was tried out after the plaintiffs took possession of the land. It was found that the wells furnished a very small quantity of water and the defendant then had the pump removed and set to work to deepen the wells. [5] The contemporaneous and practical construction of a contract by the parties is strong evidence of the meaning of equivocal terms. (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 178 [68 Pac. 598]; *Kennedy* v. *Lee*, 147 Cal. 596 [82 Pac. 257].) The testimony is uncontradicted that the plaintiffs continually complained to the defendant that the wells she had furnished were inadequate, and the defendant never asserted that she was not under obligation to furnish wells supplying adequate water to irrigate the land; that the defendant engaged men to work upon the wells to deepen them and increase the water supply

and to pump the sand therefrom. In fact, defendant's testimony at the trial was largely devoted to explaining her efforts to improve the wells by pumping sand from them, connecting them and otherwise attempting to increase the water supply. We think there can be no doubt about her obligation in this respect under the lease.

Appellant makes the point that the defendant was not bound to furnish wells located upon the leased land, but that her obligation in that matter was fully met if she furnished wells on adjoining land from which water could be carried to the leased land. It is unnecessary for us to discuss this question; it is immaterial here, for the reason that the record contains testimony to the effect that the defendant did not furnish sufficient water from any source to irrigate the land properly for the growing of rice. This point is made because the record contains some testimony to the effect that the defendant was the owner of a one-quarter interest in a well upon the land adjoining the land leased to the plaintiffs, and that the plaintiffs might have used the water from that well. This testimony, however, is of no value to the appellant because it is contradicted flatly by the testimony of the plaintiffs that Mrs. Lange told them that she had sold her interest in that well and that the plaintiffs were not at liberty to use the water therefrom, and, further, that the plaintiffs were denied the use of the water from this well by the man in possession of the land upon which it was located. The conflict in the evidence upon this question was resolved in favor of the plaintiffs by the trial court, which found, as stated heretofore, that no sufficient amount of water was furnished by the defendant, and further found, that on or about the fifteenth day of May, 1919, the said defendant notified the plaintiffs that she was unable to furnish water sufficient to irrigate said lands and directed said plaintiffs to cease planting rice therein. This finding is supported by testimony in the record.

Under the findings, then, this court must conclude that the defendant did fail to comply with her contract. This leaves for our consideration the other objection made by appellant that the plaintiffs did not comply with their obligations under the contract in that they did not properly level and check the land and that the checking which was

done by them was not completed within the time allowed therefor. The contract provided that the land should be leveled and checked by April 1, 1919, and that the water should be furnished by May 1, 1919. The court found that the provision in the contract that the plaintiffs should level and check the land by April 1, 1919, was designed and intended by the parties to require the land to be leveled and checked in sufficient time to permit of the planting of same and the same being in readiness to receive the water so to be furnished by the defendant. The record contains testimony to the effect that several times the plaintiffs extended the time in which the defendant was to furnish the irrigation system. Assuredly, such extensions would, in equity, allow plaintiffs a corresponding increase in the time allowed them to complete their work of preparation for use of the water. At most, the dates for checking the land and for supplying the water were relative dates. The defendant's time to meet her obligation under the lease had been extended by the plaintiffs for a month and a half, and one of the plaintiffs testified that their work of checking and leveling had been done prior to May 1st, except for a "little reinforcing here and there." It appears, therefore, that the plaintiffs' work had been done within the additional amount of time allowed the defendant to perform her part of the contract. There is absolutely nothing in the record to indicate that defendant was damaged or prejudiced in any way by the fact that the plaintiffs took this additional time in which to complete their work, and it clearly appears that the checking and leveling served no purpose and were not at all material until there was water to be used upon the land. We think, therefore, that there is no merit in this contention of the appellant.

The testimony as to the character of the work done by the plaintiffs upon the land was in sharp conflict. Much of the record is devoted to this question, and it would serve no useful purpose to discuss the evidence. It is sufficient to say that the court found that the plaintiffs had gone upon the land and in reliance upon the contract between them and the defendant had checked and leveled the whole thereof and cultivated one hundred acres thereof with what are known as disc cultivators and drilled and seeded sixty acres thereof to rice. Appellant relies upon certain testi-

mony in the record to the effect that what is known as the "square" checking system was more effective in irrigating than the "contour" system used by the plaintiffs. We think this becomes immaterial, because the plaintiffs were under no obligation to use any particular system, but only a system which was proper and customary in raising the crop they had undertaken to plant. There is testimony in the record by the witness Wiley, who had grown rice himself and had had experience in this industry other than his own ranching, that the "contour" system of checking was used almost entirely for growing rice, and there is, in the record, the testimony of the witness Clegg, who stated that although he considered the "square" check system better than the "contour" system, nevertheless, there was more rice planted by farmers in the "contour" system than in the "square" system, and that the checking done by the plaintiffs was a good job of "contour" checking.

Furthermore, one of the plaintiffs testified that the work which had actually been done upon the land and for which recovery was sought actually cost about $30 an acre, or a total of $4,800. There was other testimony in the record that this work would cost about $40 an acre. The plaintiffs recovered only $3,200, or the sum of $20 an acre, so it is apparent that even though there may have been some defects in the work of checking and leveling done by the plaintiffs, the defendant was required to pay only the reasonable value of the work actually done.

There are no other matters requiring discussion and the judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 23, 1922.

All the Justices concurred.