[Civ. No. 5130. Second Appellate District, Division Two.—April 30, 1928.]

N. W. ZIMMER, Respondent, v. C. L. EDINGER, Appellant.

Tanner, Odell & Taft for Appellant.

Joe Crail and Harold C. Morton for Respondent.

STEPHENS, J., *pro tem.*—This is an action for real estate commission. Plaintiff alleged three causes of action in his second amended complaint. The answer admits there was an authorization in writing from defendant to plaintiff as alleged in the complaint, but denies that any sale was consummated thereunder or commission earned. The court's findings are that plaintiff's allegations are true in the main, and judgment was awarded against defendant in the sum of $1,770, the full amount prayed for, together with costs. Defendant appeals from the judgment under the alternative method, and presses the points that the findings are not supported by the evidence and that the court committed error in the admission of evidence relating to custom in the matter of a cash deposit in escrow pending search of title, etc.

██ The facts relating to the first alleged cause of action are as follows: The defendant-appellant owned certain property in that part of the city of Los Angeles known as Sawtelle. The plaintiff-respondent, a real estate agent who had formerly done some business with appellant, and who was personally acquainted with him, was trying to arrange for the leasing of a theater which appellant contemplated building on his property. In this connection respondent introduced appellant to a Mr. Fyhn as a possible lessee. Appellant soon abandoned the project, however, as it entailed an expenditure beyond his means. There was some discussion

during the summer between the three, looking to a sale of 60 feet of the property to Fyhn for $250 a front foot. Nothing definite on this occurred, but on October 24, 1922, Fyhn stated to respondent that he had made arrangements for money with the Citizens Bank, through a Mr. Schnell, and was ready to buy. Respondent then went to appellant (he testified that he told appellant about Fyhn's statement) and secured the following document:

"Sawtelle, Calif.,
"October 25–1922.

"I hereby appoint and nominate N. W. Zimmer a licensed Real Estate Broker, of Sawtelle, Calif., as my personal and sole agent for a period of ten days from date to sell for me the following described property situated at the North East corner of Santa Monica Blvd. and Gettysburg Ave. Sawtelle, Calif. and further known as lots (8) Eight and (9) Nine, Block H, Barnett Villa Tract, at the price of $250 a front foot on the Santa Monica Blvd. frontage approximately 142 feet more or less, either 60 ft. or all of said frontage. In case the said N. W. Zimmer consummates a sale for me within the prescribed time I agree to pay him a commission of 5% on the purchase price.

"(Signed) C. L. EDINGER."

Fyhn had talked with Schnell and had promised the latter $1,000 if he would find parties to finance a theater proposition such as Fyhn desired. Schnell found such parties and this was the basis of Fyhn's statement to respondent which moved respondent to secure the authorization from appellant.

The morning after the authorization was given, Schnell sent word to appellant that he had found purchasers, naming Hughes and King—the same persons who were to furnish the money for Fyhn's proposition. Appellant then informed Schnell of the authorization. There is some testimony that there was a bad feeling existing between Schnell and respondent. Appellant went to respondent, stating something about Fyhn and associates being ready, as was he, to go into escrow, and asked that he be released from the authorization. A quarrel ensued, in which it seems that appellant sought to have the respondent take a one-half commission. This was declined by respondent, and threats were made that the deal was off and that respondent would not get a cent commission. Hughes and King thereupon with-

drew and nothing further came of the negotiations. These happenings occurred about October 25 or 26, 1922, and on October 28th appellant signed a revocation of the authorization and caused it to be delivered to respondent. Subsequent to February 7, 1923, Fyhn purchased 60 feet of appellant's lot.

The court found for plaintiff that the sale of the 60 feet was made through the efforts of respondent and under the terms of the authority herein set out; that the sale wherein Hughes and King were to put up the money was prevented by appellant, and that it was prevented through a scheme whereby Fyhn was to purchase the 60 feet after expiration of the authority given respondent.

Appellant contends that he did not prevent the sale, but that Schnell did. However, it appears from the evidence that the deal would have proceeded had respondent agreed to take one-half of his commission instead of demanding the whole of it, which appellant would not pay. It is passing strange why Schnell would have proceeded if one-half the commission had been paid but wholly declined when all had to be paid, and this, considering that neither Schnell nor his associates Hughes and King had any financial interest in the payment or nonpayment of the commission. The evidence is highly conflicting upon this point and subject to construction. We cannot say that there was no evidence upon which the court could reasonably have arrived at its conclusion on this cause of action.

We are cognizant of the expression in the authorization, "In case the said N. W. Zimmer consummates a sale for me within the prescribed time I agree to pay him a commission of 5% on the purchase price." The court finds that such consummation was only prevented by the arbitrary action of appellant. The evidence shows that Schnell, Hughes and King met through the direct act of Fyhn, who was dealing with Zimmer, and that they were ready, willing and able to proceed. As was said in *Houston* v. *Williams*, 53 Cal. App. 267 [200 Pac. 55], "As full performance was prevented by the act of the owner, the agent had earned his commission." Under such circumstances respondent is entitled to the full benefit of his actions under the terms of his authorization.

■ After the incident upon which the first cause of action is based, and on the morning of October 27th, respondent having received a deposit of $250 on the purchase price of the property from an agent representing a Mrs. Mary Regan, tendered the same to appellant, whereupon the latter declined the tender on the ground that it was not enough. The next day appellant revoked the authorization to respondent. On October 28th, and subsequent to such revocation, an attorney for Mrs. Regan tendered by writing the full amount of cash in payment for the property. On October 31st appellant replied to such tender, stating that if Mrs. Regan would deposit in bank by 3 o'clock in the afternoon of the next day the full purchase price he would furnish a deed with certificate of title showing the property clear except "subject to certain street improvement bonds and some taxes," the amounts thereof to be deducted from the sum paid to him, commission thereon to be paid according to rules of the Los Angeles Realty Board. Nothing further was done until November 4th (the tenth and last day allotted respondent to consummate the sale), when appellant modified his instructions at the bank, authorizing $2,500 initial payment, balance "when title shows clear." Respondent in his brief says: "The demand of appellant that the full purchase price be put up at once being told to Mary Regan, the prospective purchaser, and she being unable to procure that amount of money in twenty-four hours, dropped the matter and did nothing further towards purchasing the property." This would demonstrate that the tender contained in the letter of Mrs. Regan's attorney could not have made good, and that she directed it when in fact she knowingly could not perform.

The authorization clearly required that the sale should be *consummated* before a commission was earned. There was no deal with Mrs. Regan ever consummated. Appellant was under no obligation to accept the $250 originally tendered on this transaction, because there was nothing in writing binding her to proceed further, and we seriously doubt that the matter of custom could affect the status of this proposed deal. Even if it could, the $250 tendered or the $1,000 verbally offered was not sufficient, as the testimony was that customarily "10% or 20" was required as the first deposit.

 We thoroughly agree with counsel for respondent, and with the authorities he cites in support of the proposition that under an ordinary authorization a revocation of the authority while a sale is in progress with strong likelihood of its being successful cannot deprive the agent of his commission. But in the instant case, as to Mary Regan, there was no deal on at the time the authorized period expired. We conclude that there was no testimony to support the main allegations of the second cause of action, and that the findings are therefore not supported by the evidence.

The judgment entered was for the sum of $1,770, which covers and includes the sums claimed on both the Fyhn and Regan transactions. Inasmuch as we are sustaining only that part of the judgment which is based upon the Fyhn transaction, amounting to $647.50, the judgment is modified by deducting therefrom the sum of $1,122.50, and as so modified it is affirmed.

Craig, Acting P. J., and Thompson, J., concurred.