[Civ. No. 20551. Second Dist., Div. Three. Apr. 8, 1955.]

GUS E. SWANSON et al., Respondents, v. DEL THURBER et al., Appellants.

*Assigned by Chairman of Judicial Council.

David A. Fall for Appellants.

Ball, Hunt & Hart for Respondents.

SHINN, P. J.—This is an appeal by Del Thurber and Katherine E. Thurber from a judgment in favor of Gus E. Swanson, Clark C. Burgess and Rolland B. Hawk for $17,500 claimed as a real estate broker's commission.

The property involved was about 6 acres in the county of Los Angeles which was known as the County Fair Market; the controversy arose out of a proposed purchase of the property by Ernest E. and Louise E. Belcher for $350,000.

It was alleged in the complaint that on February 28, 1953, defendants employed plaintiffs from that date to April 1, 1953, to find a purchaser for the property for the sum of $350,000 "for which plaintiffs would be paid by defendants 5% of the sale price, or $17,500.00, as their compensation and commisison"; that pursuant to their employment plaintiffs negotiated the sale of the property to Belcher and wife upon terms and conditions required by defendants and that the proposed purchasers were willing, ready and able to complete the purchase; that plaintiffs have fully performed their services but have been paid nothing. A second cause of action was for $17,500 for services rendered as real estate brokers. It was alleged in the complaint that a copy of the employment agreement was attached to the complaint marked Exhibit "A." There is a copy of a written contract attached to the complaint marked Exhibit "A" but it is not the contract alleged. However, we find in the exhibits a written employment of the brokers which corresponds to the agreement alleged. It was signed by Del Thurber, addressed to plaintiffs, and it appointed plaintiffs Thurbers' agent to and including April 1, 1953, to sell the property for $350,000 on terms the seller might accept. It was a promise to pay plaintiffs 5 per cent of the selling price if the property was sold or exchanged while the employment was in force or if sold within 90 days thereafter to anyone with whom the plaintiffs had negotiated, but it contained this additional provision: "In case deposit is forfeited, one-half of same shall be retained by or paid to said agent, and one-half to the owner." This employment agreement was accepted in writing by Rolland B. Hawk on behalf of plaintiffs. Following the word "terms" in the writing is the word "submit" and after the word "loan" are listed a first trust deed of $72,000 and a second trust deed of $97,000.

March 2 a writing labeled "Deposit Receipt" was signed by which Ernest E. Belcher agreed to purchased the property and defendants agreed to sell it "upon the terms and conditions herein stated." The writing contained a promise signed by Del Thurber reading as follows: "I agree to sell the above described property upon the terms and conditions herein stated and agree to pay said broker as commission the sum of 5% of total sales price Dollars, or one-half of the amounts paid hereon should same be forfeited by purchaser. One-half of said amount, however, shall not exceed said commission." This writing was in the form of a receipt

for money received in the sum of "No and 00/100 Dollars" and it was signed by Hawk on behalf of plaintiffs. The terms stated in this writing listed the first and second trust deeds and called for a third trust deed to be executed by the buyer in the amount of the difference between the existing encumbrances and the sale price of $350,000, or approximately $180,000. On the third trust deed only interest at 6 per cent was to be paid during the three years commencing January 1, 1954, then $3,000 plus interest per year for three years, then $10,000 plus interest per year until paid in full. The writing contained the following provision: "Should the title to said property prove defective or unmerchantable and should the seller be unable to perfect same within a reasonable time from the date hereof all amounts paid hereon shall be returned to the purchaser unless the purchaser elects to accept the title in said condition." March 4, 1953, the parties went to escrow and they signed instructions which changed somewhat the payments on the purchase money trust deed but generally conformed to the earlier agreement and called for completion of the escrow on or before April 4, 1953. The escrow instructions read in part as follows: "If the conditions of this escrow are not complied with on or before April 4, 1953, you are to complete the same as soon as possible thereafter unless, subsequent to said date and prior to the recording of any document herein, the party not in default makes written demand on you for the return of the money and/or documents deposited by him." The instructions over the signatures of the sellers also contained the following: "From the money due me from this escrow, or from money which I will deposit, you are authorized to pay (a) all encumbrances necessary to enable you to obtain the Policy of Title Insurance above demanded; (b) one-half your escrow fee; (c) $198.00 for Internal Revenue Stamps; (d) costs of Policy of Title Insurance, and of drawing all documents executed by me, and recording documents in my favor, and (e) a commission of $17,500.00 to Swanson-Burgess Co. (Rolland Hawk)—72798 Pay remainder by check to Dell Thurber. . . ."

The sale was not consummated. It was shown by documents introduced by plaintiffs that on April 17 Belcher and wife withdrew from the escrow and demanded the return of all moneys and documents which they had deposited therein and on May 29 the Thurbers notified the escrow holder that they cancelled the escrow by letter stating: "As Mr. Belcher

cancelled the escrow & failed to fulfill his end of the transaction please bill him for all expense.'' There was no evidence that any money was deposited in escrow by the Belchers although they agreed to pay for preparation of documents, recording fees and one-half of escrow expense, and no evidence that they deposited the note and trust deed.

It may be noted here that certain additional writings bearing date of March 4, 1953, were placed in escrow. There was a writing signed by defendants, approved in writing by plaintiffs, stating that certain promissory notes would be handed to the escrow holder ''in lieu of $17,500.00 to cover commission in full due Swanson-Burgess Co.'' The writing listed one promissory note for $7,875 bearing interest from date payable January 1, 1960, and a note for $9,625 bearing interest payable $100 or more each month beginning May 15, 1953, the payments to be increased to $200 per month December 15, 1953, the entire balance to become due February 1, 1960. The promissory notes as described were handed in by the Thurbers with the instruction but were not signed. Under date of March 4, on the back of the original listing agreement, Rolland B. Hawk, as broker, wrote and signed the following: ''It is understood that if the sale to Ernest Belcher, now in escrow at the F & M Bank in Long Beach, is not consum[m]ated, this exclusive listing will be void and not apply to any purchaser other than Mr. Belcher.'' In addition to denials, the answer of the defendants alleged, as affirmative defenses, an oral agreement that commissions were to be paid only if a sale should be consummated and then only out of the purchase price which was to be paid January 1, 1960, and it was alleged that the action was prematurely brought. Defendants also filed a cross-complaint against plaintiffs and the Belchers in which they alleged that prior to their employment by plaintiffs the brokers represented that they could produce a buyer who could pay down no money but would pay for the property in about five years, and that it was agreed that if such a sale were made the commission would be paid out of the purchase price as the same was paid; thereafter, relying on said oral agreement, defendants signed the deposit receipt of March 2. It was alleged that the oral agreement for payment of a commission was omitted from the writing through the mutual mistake of the parties and also through the mistake of Thurber known to and taken advantage of by Hawk. Additional causes of action of the cross-complaint alleged the agreement of pur-

chase, breach of the agreement, and purported to allege damages sustained through the failure of the Belchers to consummate the purchase. These causes of action were dismissed as to the Belchers by the court, presumably after the sustaining of a demurrer.

The court found the allegations of the complaint to be true and the affirmative defenses and the allegations of the cross-complaint to be untrue. In substance the findings were that the writings expressed the entire agreement of the parties and that plaintiffs had rendered services which entitled them to recover a commission. Substantially the court found there was no agreement to accept promissory notes as payment of a commission.

A copy of the deposit receipt was attached to the complaint as Exhibit A. It was not an unconditional promise to pay the brokers $17,500 for producing a purchaser ready, able and willing to purchase or one with whom defendants would enter into a contract of sale. There was an alternative promise to pay one-half of the amounts deposited and forfeited by a purchaser not exceeding a 5 per cent commission. It was not alleged in the complaint whether a sale was consummated and, of course, it was not alleged that the sale fell through as a result of the default of either the sellers or the purchasers. The complaint was defective in this particular in that it did not alleged that the sale was not consummated and that the failure of consummation was not due to the fault of the buyers. However, no point was made of this defect at the trial nor is it made now. The question as to responsibility for failure of consummation of the sale was not tried and no finding was made thereon.

If the Belchers refused or without good excuse failed to complete the purchase, plaintiffs were not entitled to recover a commission. They would have been limited by their employment contract to one-half of any deposit that was forfeited not exceeding 5 per cent of the purchase price. In *Kline* v. *Johnson* (Appellate Department, Superior Court, San Diego), 121 Cal.App.2d Supp. 851 [263 P.2d 494], brokers sued for a commission under an agreement substantially the same as the one before us. A contract of sale was entered into; no money was deposited; the purchasers refused to complete the purchase and a sale was not consummated. A judgment in favor of plaintiffs was reversed. It was held that the brokers were entitled to nothing for the reason there was no deposit to be divided. We are thor-

oughly in accord with that holding. Although, as alleged in the complaint, the Belchers may have been ready, able and willing to make the purchase when they signed the agreement it would not follow that they did not thereafter fail or refuse to perform their agreement. They had a duty to deposit or offer to deposit in escrow everything that was required of them. (Civ. Code, § 1439.) The provision with respect to their possible default presupposed that they would have made an agreement to purchase and thereafter failed to go through with it.

Upon the other hand, in the absence of an agreement to the contrary, if the purchase failed of consummation because of the unexcused failure or refusal of the defendants to consummate it, the plaintiffs would have established their claim to the amount of commission they would have earned if the sale had been consummated. Even if the commission was only to be paid out of the purchase money as it was received by defendants, and there was no agreement that it would be paid only upon a consummated sale, the plaintiffs would still have been entitled to recover since defendants could not by a breach of their agreement to sell defeat the rights of the brokers. ■ The law is stated in 9 Cal.Jur.2d, pp. 272-273, as follows: ''Even though a broker's contract provides that his commission is payable only when the transaction is actually completed, if the transaction fails of consummation solely through the fault of the vendor, the broker is nevertheless entitled to his commission. Under such circumstances, the condition upon which payment was made contingent is excused. . . . In the absence of an agreement to the contrary, a broker's right to commissions for procuring a purchaser is not affected by the fact that the contemplated transaction fails of completion because the principal is not the owner of the property, or because his title is defective.'' The text is supported by the cases cited thereunder, namely, *Realty Bonds etc. Co.* v. *Point Richmond etc. Co.*, 171 Cal. 238 [152 P. 433] ; *Stanton* v. *Carnahan*, 15 Cal.App. 527 [115 P. 339] ; *Zimmer* v. *Edinger*, 91 Cal.App. 435 [267 P. 110]. (And see *Ratzlaff* v. *Trainor-Desmond Co.*, 41 Cal.App. 586 [183 P. 269].)

Of course, if plaintiffs had been employed under an unconditional contract for commission in case they sold the property they would have earned a commission when defendants entered into a contract of sale with the Belchers. But as we have seen there was the alternative agreement on their

part to accept one-half of any deposit that might be forfeited by a purchaser; they would not have been entitled to a commission if the Belchers wrongfully withdrew from the escrow. There was no evidence that they had a reason for withdrawing other than the fact that the escrow was not completed by April 4. The question of their right to withdraw was not tried or decided. Neither was it determined that the Thurbers refused or were unable to furnish a title satisfactory the buyers.

Plaintiffs introduced in evidence a title report showing the existing trust deeds described in the instructions, certain leases, and pendency of an action against the holder of the second trust deed. The report also showed small liens existing but it was shown by plaintiffs' evidence that the Thurbers had caused these to be released. As to the pending action, it appeared that Thurber had been indemnified when he purchased the property. Defendants offered to prove a conversation had with Belcher and Hawk with relation to an indemnity agreement to be given to the Belchers but plaintiffs' objection to this evidence was sustained. Neither Mr. nor Mrs. Belcher testified. They did, however, request, through the escrow, that a payment due on the second trust deed June 1, 1953, be extended to January 1, 1954. Defendants' attempt to prove that this extension was obtained was objected to and the objection was sustained. It does not appear in the evidence that the Belchers made any objection to the condition of the title or that they were unsatisfied therewith. Neither the buyers nor the sellers made any demands upon the others for performance. As we have said, it was incumbent upon plaintiffs to prove that the failure to close the escrow by April 4 was not due to the default of the buyers or, in other words, that the escrow could have been completed had the sellers complied with the conditions applicable to them. The evidence did not establish that fact.

Although the evidence failed to show that the Belchers complied with their undertakings in the escrow, we shall assume as a fact most favorable to plaintiffs that there was a mutual rescission of the escrow instructions and the contract of sale, inasmuch as Thurber did not object to a cancellation by Belcher and himself gave notice of cancellation. However, mutual rescission, standing alone, would not defeat plaintiffs' right to a commission, inasmuch as they were otherwise entitled to a commission of 5 per cent unless the purchaser defaulted.

This brings us to defendants' contention that the court erred in numerous instances in which evidence was excluded. Defendants offered to prove conversations between Thurber and Hawk, prior to the contract of sale, to the effect that no commission was to be paid unless a sale was consummated. They offered evidence of such an agreement at the time they were in the escrow office and the instructions were being prepared and also evidence that when the agreement was made to give the notes there was an agreement between Thurber and plaintiffs that the notes would be signed and delivered only in case the Belchers went through with their purchase. Plaintiffs' objections to all this offered testimony were sustained. We think these rulings were in error. As we have pointed out, plaintiffs had no unconditional contract for a commission for finding a buyer and they were entitled to nothing if they produced a buyer who paid nothing on account and defaulted in his agreement to purchase. To be sure Thurber agreed in the escrow instructions to deposit sufficient money to pay a commission of $17,500 but at the same time this was nullified by the agreement that notes would be given for the commission.

Defendants offered to prove that while the escrow papers were being prepared Mr. Thurber had conversations with Mr. Hawk respecting the issuance of notes in payment of a commission and that it was agreed that the notes would not be given unless the escrow was completed. The court excluded the offered evidence. We think it should have been received. The written agreement called for delivery of the notes into escrow. This meant that they would not be delivered to plaintiffs unless the escrow was completed. Moreover, the notes remained payable, as payments on the purchase money trust deed would be received by the sellers. These circumstances were to be considered with the further fact that no money whatever would be received by the Thurbers other than payments to be made on the trust deed. The evidence as a whole left the understanding of the parties uncertain with respect to the Thurbers' liability for a commission in case the Belcher sale fell through and we think the court should have received evidence of the negotiations and conversations as an aid in the interpretation of the agreements between plaintiffs and defendants and especially the agreement for the giving of the notes which modified the previous agreements. The agreement for placing the notes in escrow, while it was certain with respect to their delivery if the

escrow was closed, did not purport to cover the contingency that the escrow would not be closed. This uncertainty rendered admissible evidence of any oral agreement pertaining to that matter. (*Williams* v. *Ashurst Oil etc. Co.*, 144 Cal. 619 [78 P. 28]; *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 P. 876]; *Savings Bank of So. Calif.* v. *Asbury*, 117 Cal. 96, 103 [48 P. 1081]; *Whittier* v. *Home Sav. Bank*, 161 Cal. 311 [119 P. 92]; *Wolters* v. *King*, 119 Cal. 172 [51 P. 35]; *Lindsay* v. *Mack*, 5 Cal.App.2d 491 [43 P.2d 350]; *Gardiner* v. *Burket*, 3 Cal.App.2d 666 [40 P.2d 279].) Moreover, if, as we assume for the purposes of our opinion, the Thurbers assented to cancellation of the escrow, and if they did so in reliance upon an agreement with plaintiffs that no commission would be payable under such circumstances, plaintiffs would be estopped to repudiate their agreement.

There is another matter with respect to which defendants should have been permitted any available evidence of an agreement with the Belchers for the waiver of matters affecting the title as shown on the title report. ■ We refer especially to conversations respecting the indemnity agreement which had been given Thurber when he purchased the property. It appears to have been the intention of defendants to prove an agreement with the Belchers that they would accept such an indemnity agreement. The evidence may have had a direct bearing upon the question of responsibility for failure to complete the sale inasmuch as there was no evidence that the Belchers made any objection to the state of the title.

We refer now to the provision of the deposit receipt that if the title was defective and was not perfected within a reasonable time any deposit should be refunded unless the purchaser was nevertheless willing to accept the defective title. ■ Manifestly the contract of sale and the escrow instructions should be read together unless the parties understood that the former was superseded by the latter. ■ Signing the escrow instructions did not, as a matter of law, abrogate the earlier contract. (*Womble* v. *Wilbur*, 3 Cal.App. 527, 534 [86 P. 921].) It was a question of fact whether the parties intended the contract to remain in effect. If so, another question arises. If the title was defective and the buyer was not willing to accept it, did he have a duty to point out the defects, and did the seller then have a reasonable time in which to correct them. If the parties so intended, the buyer could not refrain from making his objections until the time had expired for closing

the escrow. It is the part of common sense and fair dealing that a buyer should announce any objection he may have to the state of the title, and he has a duty to do so if the contract gives the seller the right to perfect it within a given time, or a reasonable time. This is also the law. (*Easton* v. *Montgomery*, 90 Cal. 307 [27 P. 280, 25 Am.St.Rep. 123].)

Much as we dislike to prolong this opinion we must add that all the offered evidence as to conversations between Thurber and Hawk should have been admitted under the allegations of the cross-complaint of mutual mistake and mistake of Thurber known to and taken advantage of by Hawk respecting the alleged omission from the agreements of a provision that no commission would be payable unless the Belchers acquired the property.

Defendants contend that the writing that provided for termination of the listing if the sale to the Belchers was not concluded also in that event terminated their liability for a commission. We find no merit in this contention.

The contracts respecting the payment of a commission are in a form that is in common use in that they provide for a commission to be paid in the contingency that an intending buyer may contract to buy the property and thereafter fail or refuse to complete his purchase. An affirmance of the present judgment would stand as a precedent for the decision of similar cases without a trial of the issues upon which liability depends, and would invite much confusion. When a broker sues on such a contract the question necessarily arises whether the sale fell through because of the fault of the sellers or the buyers. If the latter is at fault the law is settled by the case of *Kline* v. *Johnson, supra.* If the seller is at fault the case is governed by the rule previously stated that the principal cannot defeat the claim of the broker by refusing to go through with the sale either by disposing of the property or otherwise wrongfully preventing a sale.

The judgment must be reversed. The parties should be permitted to amend their pleadings for the trial of the issues we have discussed. A plaintiff who has been prevented from performing his contract may not recover under an allegation that he has fully performed. (*Daley* v. *Russ*, 86 Cal. 114 [24 P. 867]; *Herdal* v. *Sheehy*, 173 Cal. 163 [159 P. 422]; 12 Cal.Jur.2d, p. 450 et seq.) A defendant may not rely on a defense of estoppel without pleading it.

Notwithstanding our assumption for the purposes of this opinion that there was a mutual abandonment of the con-

tract of sale, it will be for the trial court to decide whether the failure of consummation of the sale was due to the default of the Belchers or the Thurbers. The question may arise as to the applicability of the provision of the deposit receipt which gave the purchaser the right to withdraw if the title was imperfect with respect to matters that were not waived by the purchaser. The question will be whether the parties understood from this provision that the sellers would have a reasonable time to perfect the title after the buyers should make known their objections and their unwillingness to accept a title that was imperfect to the extent of being unmarketable.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.